(13 App. Div. 439.)

### MARRINAN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. January 27, 1897.)

1. MASTER AND SERVANT—INCOMPETENCE OF FIREMAN—EVIDENCE.

No question of fact is raised as to whether a locomotive fireman was incompetent to run the locomotive a few feet in the yard, by evidence that he had caused an accident while serving as engineer, that he had once run an engine faster than another engineer thought was proper, and· that on another occasion a locomotive which he was running struck a car with what a witness considered undue force.

2. SAME—COMPETENCE OF EMPLOYE—NICKNAMES.

On an issue whether a locomotive fireman was careless and incompetent, evidence that he was called "Crazy Nolan" by his co-employés is inadmissible.

Appeal from trial term, Monroe county.

Action by Frank J. Marrinan against the New York Central ·& Hudson River Railroad Company to recover for personal injuries. From a judgment entered on an order dismissing the complaint, made at the close of plaintiff's evidence, and from an order denying a motion for a new trial on the minutes, plaintiff appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

Charles Van Voorhis, for appellant.

Albert H. Harris, for respondent.

FOLLETT, J. This action was begun April 30, 1894, to recover damages for a personal injury, caused, it is alleged, by the negligence of the defendant. The plaintiff is by occupation a plumber, and July 1, 1893, he entered the service of the defendant, and continued therein until August 6, 1893. In his testimony he describes his duties as follows:

"On the 1st day of July, 1893, I went to work for the New York Central, at its depot in Rochester. * * * I was employed to take charge of the air brakes, and, in case anything should happen to them, I was supposed to repair them; and they was going to get tools for me to do so, and also to open the couplings in case of an engine backing down to the cars to couple, so the cars should couple automatically. I did these duties there. * * * I worked there nights. On the 6th day of August following, I went to work at six o'clock in the evening, as I always did."

About 8 o'clock in the evening of August 6, 1893, while the plaintiff was engaged in repairing a coach and locomotive for coupling, the locomotive was backed against the coach, crushing plaintiff's left arm so that it was necessarily amputated at the elbow.

At the close of the plaintiff's evidence, the defendant moved that the complaint be dismissed, on the grounds (1) that the plaintiff had not shown that he was free·from contributory negligence; (2) that the plaintiff failed to show that the accident was caused by the negligence of the defendant. The plaintiff asked to go to the jury on three grounds: (1) Whether the defendant was negligent. in continuing in its service William V. Nolan, a fireman, after his violation of defendant's rules; (2) whether the defendant had notice of a rule prohibiting firemen to run locomotives from the roundhouse and

about the yard without an engineer being on hand; (3) on all the questions in the case.   The plaintiff's requests were denied; the defendant's motion was granted; and the plaintiff took an exception.

William V. Nolan, who moved the locomotive about six or eight feet at the time of the accident, had been employed by the defendant since November 1, 1887, during which time he had acted as a fireman on locomotives, except that during four or five months, in 1891 and 1892, he acted as engineer, after having been examined by the master mechanic of the division as to his qualifications. The plaintiff attempted to establish a cause of action by showing that the defendant had a rule which prohibited firemen from running locomotives out of the roundhouse and about the yard, and that Nolan was violating the rule, and had been so accustomed to violate it that the defendant's officers knew or ought to have known of his practice.   No such rule was shown to have been established and promulgated as one of the regular printed rules of the defendant.   Mr. Peter, sworn for the plaintiff, testified that there was an oral rule not to allow a fireman or an engineer to run a locomotive out of the roundhouse unless the crew was on it.   He testified that he knew of no rule forbidding a fireman to run a locomotive.   The crew of a locomotive consists of the engineer and fireman.   Conrad, a witness sworn for the plaintiff, testified that he had been in the employ of the defendant as an oiler, and afterwards as an inspector; and that he had seen a typewritten or printed rule, signed by the defendant's master mechanic, stating that firemen and engineers were not to take locomotives out of the roundhouse unless the engineer and fireman were on board.   He testified that the rule forbade firemen from handling locomotives, and also testified that he could not say whether the rule did or not.   On the cross-examination, he said the rule forbade firemen from taking locomotives out of the roundhouse unless the engineer was on board.   I think the testimony fell far short of showing that there was a rule requiring that only engineers should be permitted to move locomotives in the yard.   It appears that Frederick Hook was the engineer in charge of this locomotive, and was engaged in oiling it, and that he stepped from the ground onto the steps of the locomotive just as Nolan moved it back to the coach.   Clearly, the engineer was in charge of his locomotive.   It was also shown that a person by the name of Frederick Heinrich was on board the locomotive at the time of the accident.   What his duties were does not appear, but, as the locomotive was about to depart with a train for Charlotte, it is inferable that he was the fireman, and it is quite clear that either he or Nolan was the fireman; so there was a full crew in charge of this locomotive at the time of the accident, and no rule which was proved or hinted at was violated.

The plaintiff also insists that the evidence was such that the jury had the right to find that Nolan was reckless and careless in the management of locomotives, which fact was known or ought to have been known to the defendant.   Nolan had had a single accident when serving as engineer, and on another occasion it was asserted that he had run a locomotive attached to a second locomotive

faster than the person in charge of the second locomotive thought he should; and on another occasion a locomotive which he was backing struck a car with more force than the witness thought it ought. This falls short of raising a question of fact whether Nolan was competent to back a locomotive six or eight feet, which was all he did, the engineer then being in charge of the locomotive.

The plaintiff offered to show that William V. Nolan, by reason of his reckless and careless habits, was called by defendant's employés "Crazy Nolan," which was objected to. The objection was sustained, and an exception taken. It was held in Gilman v. Railroad Co., 13 Allen, 433, and in Monahan v. City of Worcester, 150 Mass. 439, 23 N. E. 228, that. in case it was shown that the employé who caused the accident was intoxicated or infirm, the general reputation of the employé for drunkenness or infirmness might be shown, for the purpose of showing that the defendants had or ought to have had notice of his infirmity; and such was the rule laid down in Davis v. Railroad Co., 20 Mich. 105. See 1 Beven, Neg. 789. In Massachusetts and in Pennsylvania it is also held that the incompetency of an employé may be shown by general reputation. Hatt v. Nay, 144 Mass. 186, 10 N. E. 807; Connors v. Morton, 160 Mass. 333, 35 N. E. 860; Frazier v. Railroad Co., 38 Pa. St. 104. But this is not the rule in the state of New York. Baulec v. Railroad Co., 59 N. Y. 356; Lyons v. Railroad Co., 39 Hun, 385. In Hasken v. Railroad Co., 65 Barb. 129, affirmed 56 N. Y. 608, it was held that it was not competent to prove the reputation of the engineer of the train by which the plaintiff's intestate was killed. It was not asserted on the trial that Nolan was crazy, and nicknames are not so generally expressive of the characteristics of the persons to whom they are applied as to be competent evidence for the purpose of proving that the bearer of the name possessed the characteristics denoted by the nickname.

The plaintiff testified that Nolan asked him if everything was ready, and that he replied, "No; not yet." The plaintiff called Nolan as a witness, who testified on cross-examination that the plaintiff told him it was all right and to "back up." Whatever the fact may be, Nolan and the plaintiff were fellow servants; and whether the accident was caused by the negligence of Nolan or by the plaintiff is immaterial, for in either case the plaintiff is not entitled to recover.

The judgment and order should be affirmed, with costs. All concur.