WILLIAM E. BAIRD, Respondent, *v.* THE NEW YORK CENTRAL AND
HUDSON RIVER RAILROAD COMPANY Appellant.

*Negligence — competency of proof that a servant, whose negligence caused a collision,
was called " crazy," " rattlehead " and too " wild."*

In an action where negligence was charged against a railroad corporation, it
appeared that the plaintiff, a fireman, was injured in a collision through the
alleged incompetency of a flagman named Brown, who was sent back to flag
approaching trains, but who failed to perform this duty successfully. Upon
the trial of the action witnesses were allowed to prove that Brown was known
as "Crazy Brown;" that he was called a "rattlehead," and that he was too
"wild." The defendant objected to evidence of this character, and the court
in its charge instructed the jury that "the evidence of the names that
Brown was known and called by, and the reputation that it is testified he had,
neither of them are to be considered by the jury as proof that previous to the
accident in question he had been guilty of any negligence whatever in the dis-
charge of his duties." The court also charged that "if they rely upon specific
acts at all they must be acts prior to the accident," and that "in determining
whether it was negligent on the part of the company to keep him, (the jury)
are confined to those things alone, but they may consider, in addition to any
acts of negligence he has been guilty of, any other evidence in the case bearing
upon his mental condition or his competency."

*Held,* that a judgment for the plaintiff should be reversed, as it was plain that
the jury was not left uninfluenced by the evidence of nicknames and appella-
tions which had been applied to Brown.

APPEAL by the defendant, The New York Central and Hudson
River Railroad Company, from a judgment of the Supreme Court

in favor of the plaintiff for $4,000, entered in the office of the clerk
of the county of Onondaga, on the 2d day of April, 1895, upon the
verdict of a jury rendered after a trial at the Onondaga Circuit,
and also from an order entered in said clerk's office on the 1st day
of April, 1895, denying the defendant's motion for a new trial made
upon the minutes.

The action was brought to recover for personal injuries sustained
by the plaintiff while a fireman in the defendant's employ in a col-
lision near Canastota, November 22, 1891. The train on which the
plaintiff was injured ran into a freight train which was stalled on
the same track, being track No. 1, the most southerly one run-
ning east from Syracuse, and the one used by passenger trains that
were eastward bound. The advance freight train, which was
stalled, broke in two on going up the Wampsville grade one and
one-half miles east of Canastota, and Brown, who was a flagman, was
sent back, towards Canastota, to flag any approaching trains, which
duty was not performed successfully so as to arrest the approach of
train No. 32, being a passenger train, and it ran into the freight
train and the plaintiff received the injuries of which he complains.
Plaintiff's right to recover rested largely upon establishing the
incompetency of Brown, and sufficient notoriety of his incompetency
to attract the attention of the defendant and to render it guilty of
negligence in keeping him in its employ. The circumstances of the
accident are more fully detailed in *Park* v. *N. Y. C. & H. R. R.
R. Co.* (85 Hun, 184).

---

It was held in *Perry* v. *Dickerson* (85 N. Y. 345) that a judgment in an action
for damages for an alleged wrongful discharge from defendant's employment
prior to the expiration of the term of service was not a bar to a subsequent action
to recover wages actually earned and due prior to the alleged wrongful discharge,
as the two claims constitute separate and distinct causes of action upon which
separate actions are maintained. Judge ANDREWS who spoke for the court says:
"It is doubtless true that the plaintiff could have prosecuted in one action the
claims for wages and for damages for the wrongful dismissal. But it is not a test of
the right of a plaintiff to maintain separate actions that all the claims might have
been prosecuted in a single action. A plaintiff having separate demands against
a defendant on contract or arising from distinct trespasses or wrongs is not
required to combine them in one action although in most cases he may do so at
his election. He may prosecute them separately subject to the power of the
court in furtherance of justice and to prevent undue vexation and costs to order
the actions to be consolidated." The court distinctly held that the claim for

*Frank Hiscock*, for the appellant.

*William S. Jenney*, for the respondent.

HARDIN, P. J. :

Extensive evidence was given during the trial of the acts, doings and character, as established among railroad men, of Brown, with a view of furnishing ground upon which the jury might find that Brown was incompetent as an employee, and that his incompetency was known to the defendant, and that it was, therefore, negligent in keeping him in its employ. During this trial considerable evidence was given from the minutes of the trial of the *Park* case.

The evidence introduced by the plaintiff of Brown's incompetency was not sufficient to authorize the admission of testimony of his general reputation for the purpose of showing that the defendant was negligent in not knowing that he was incompetent. Much of the testimony related to acts of Brown and to his reputation years before the accident.

Van Auken's testimony as to his reputation related to his reputation ten or fifteen years before the accident, when he resided in the city of Schenectady, when he was an attendant at school and at Sabbath school and before his employment by the defendant. His reputation at this time and at this place was most unlikely to be

---

wages earned and due prior to the dismissal and for damages for the wrongful dismissal constituted two separate and independent causes of action. So in this action upon the breach of warranty a new cause of action arose wholly disconnected in its origin and nature with the claim for the contract price of the beer.

In *Marsh* v. *Masterton* (101 N. Y. 408) the court said, quoting from *Norton* v. *Huxley* (13 Gray, 285) : "The principle is well settled that a judgment in a former suit between the same parties is a bar to a subsequent action only when the point or question in issue is the same in both." One may sue to recover damages for fraudulent representations upon a sale of property, and if he fails to establish the fraud and is defeated upon that ground, he may subsequently begin an action for breach of warranty based upon the same transactions and the same representations and recover precisely the same damages.

But the difficulty of applying the above rule to this case arises out of the fact that the former suit is based upon two separate causes of action, one for a breach of warranty and the other upon an alleged breach of contract. The complaint upon the breach of contract alleges in substance that the Bartholomay Brewing Company agreed to compensate the plaintiff for the loss or damage which he had sustained in his business growing out of the sale and delivery of the impure and worthless beer. It seems to me that in such an action the inquiry

known by the defendant, and negligence cannot be imputed to it for not knowing his reputation then and there acquired. The evidence was received over the defendant's objection and its reception was error. The testimony related to acts and reputation which were too remote.

The evidence of the witness Dean, given upon the former trial, was read in evidence. Dean testified that he had known Brown about twelve years, and that about that time he came on to the railroad on the Troy and Schenectady branch as flagman and that he was on the witness' train as a substitute sometimes. The witness testified that he had seen Brown since that time "at long intervals" and that he had heard him talked about. "Q. Have you heard him talked about as to his mental characteristics? A. I have, that is, not from his mental characteristics, but from a handle or nickname. Q. You have heard him talked about then as to his mental characteristics? A. No, not as to his mental characteristics; have heard a name given to him. Q. Have you heard a name given to him generally by railroad men? A. I have. Q. You may tell about this nickname, whether you have heard him generally called by any name, if so, what?" Defendant objected to the question as "immaterial, incompetent, not competent in the way of notice to the defendant of any disqualification or incapacity in Brown."

---

will naturally arise as to how much has been paid on the contract, because such payment usually constitutes the leading item of damages. The object of such a suit is to recover back the sum, if any, which the plaintiff has paid out upon the contract, the benefit of which he has lost through the non-performance of the other party. The issues, therefore, which are raised by the pleadings upon this branch of the contract must necessarily involve all questions of payment. The question as to the amount of defendant's damages, including payments upon the contract, would be directly in issue in that action, and every material question of fact involved in the issue would be determined by the judgment. I think the rule is well settled that when an issue is in fact raised by the pleadings and litigated, such determination is conclusive between the parties thereto.

It was held in *Lorillard* v. *Clyde et al.* (122 N. Y. 47) that "a judgment rendered on the merits is co-extensive with the issues upon which it is founded, and is conclusive between the parties thereto, not only as to the matters actually proved, argued and submitted for decision, but also as to every other matter directly at issue by the pleadings which the defeated party might have litigated."

The plea of the former suit in bar must, therefore, for the reasons which I have indicated, be sustained, and judgment may be entered dismissing the complaint with costs.

The objections were overruled and the defendant took an excep-
tion. The witness answered, viz. : " Crazy Brown. · He was not
called by that name back at the time he worked for me; not that I
remember. Q. When do you know of his being called by that
name; for how long a time?" This was objected to by the defend-
ant and the court observed: " Take it all under objection. A. I
don't now distinctly remember; but from time to time I have
heard it spoken of; probably as far back as eight or ten years ago;
it might be longer. Q. Since that time you have heard him gen-
erally talked about as ' Crazy Brown' among railroad men?" The
same objection was made to this, and the court said : " You object to
the whole and exception." The answer was: " Among railroad
men."

The witness Brookings testified that he knew Brown and that he
had known him ten or twelve years and that he was employed at
DeWitt, and while he was there the witness had a good deal to do
with him in a number of ways, and the witness added: " He was
usually called ' Crazy.' " That was objected to, but no· ruling or
exception was taken at the time of the objection. Subsequently
the witness testified : " I know he was called a ' Rattlehead.' " This
was objected to, and a motion was made to strike it out, and the
case does not disclose what became of the motion. No exception
was taken at that point.

The witness Peter Gleason, who had been in the employ of the
railroad some thirty-five years prior to the strike, which occurred in
1890, testified that he was somewhat acquainted with Brown, and
that he had worked on the witness' train " two or three times in all.
* * * Q. By what name was he known?" This was objected
to on the ground that it is improper, incompetent and immaterial.
The objections were overruled and the defendant took an excep-
tion. " A. Knew him as ' Crazy Brown.' Q. Since you have known
him what has been his general reputation as to mental condition?
What was his general reputation as to mental capacity?" The
question was objected to on the grounds mentioned and on the further
ground, ·" the witness is not an expert, upon the ground it appears
the witness has not seen him but once in eight or nine years."
The objections were overruled and an exception was taken. The·
answer given by the witness was " Too wild; too rattleheaded;

couldn't depend really upon him, that is, without you saw him."
The defendant immediately objected again to the evidence, and
·moved to strike it out on the grounds stated in the objections to
·the questions, and the court declined to strike it out and the
defendant took an exception.    Somewhat similar evidence was
given where no exceptions were taken.

At the close of the body of the charge the court was asked to
charge "that the evidence of the names that Brown was known or
called by, and the reputation that it is testified he had, neither of
them are to be considered by the jury as proving that previous to the
accident in question he had been guilty of any negligence whatever.
in the discharge of his duties."   ln response thereto the court said :
" I charge that.    Those things are offered upon the question of
notice ; they are received upon the question of notice, as I stated in
my charge."    Thereupon the court was asked " to charge the further
fact that the jury must find Brown to have been guilty of specific
negligence in the discharge of his duty as flagman or brakeman before
the night· in question, to charge the defendant with negligence."
Thereupon the court replied : " Of course, if they rely upon specific
acts at all,· they must be acts prior to this accident."    Some further
colloquy occurred between the counsel and the court,·and the court
observed : " As a general proposition, I suppose if you can prove
that a man was a lunatic or idiot, that would be competent upon the
fact whether he was a competent and proper employee, although he
had not worked for a railroad, and had not been guilty actually of
specific acts of incompetency."    The court charged the jury affirm-
atively that " In determining whether it was negligent on the part
of the company to keep him, [the jury] are not confined to those
things alone, but they may consider, in addition to any acts of negli-
gence he has been guilty of, any other evidence in the case bearing
upon his mental condition or his competency."    As soon as that
language fell from the court, the counsel for the defendant said, " So
far as that is concerned, I except."

We think the reception of the evidence to which we have referred,
in view of the manner in which it was dealt with by the learned
trial judge, and the exceptions which we have stated in respect to
the receiving of the evidence and the charge in respect thereto, to.
which exceptions were taken, present error.

The jury was not left uninfluenced by the evidence of nicknames and appellations which had been applied to Brown. The reception of the evidence was, therefore, prejudicial error. (*Marrinan* v. *N. Y. C. & H. R. R. R. Co.*, 13 App. Div. 439 : *Cameron* v. *N. Y. C. & H. R. R. R. Co.*, 145 N. Y. 400.)

The exceptions to which we have referred present different questions from those considered by the court in *Park* v. *N. Y. C. R. R. Co.* (85 Hun, 184).

The foregoing views lead to the conclusion that a new trial should be ordered.

All concurred.

Judgment and order reversed and a new trial ordered, with costs to abide the event.