BAIRD v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. April 10. 1897.)

1. MASTER AND SERVANT—INCOMPETENCY OF SERVANT—REPUTATION.
　　The reputation of a servant 10 or 15 years before the accident alleged to have been caused by his negligence, and while he was yet at school, is not admissible to charge the master with knowledge of his incompetency.

2. SAME—NICKNAME INDICATING INCOMPETENCY.
　　It is error, in an action against a master for injuries alleged to have been caused by the negligence of a servant, to admit evidence that the servant was nicknamed "Crazy" by his fellow servants, and to charge that the jury might consider any evidence in the case bearing on the servant's mental condition or his competency.

Appeal from circuit court, Onondaga county.

Action by William F. Baird against the New York Central & Hudson River Railroad Company. From a judgment entered on a verdict in favor of plaintiff for $4,000, and from an order denying a mo-

tion for a new trial, made on the minutes, defendant appeals.    Reversed.

Action to recover for personal injuries sustained by the plaintiff while a fireman in the defendant's employ in a collision near Canastota, November 22, 1891. The train on which the plaintiff was injured ran into a freight train which was stalled on the same track, being track No. 1, the most southerly one running east from Syracuse, and the one used by passenger trains that were eastward bound. The advance freight train, which was stalled, broke in two on going up the Wampsville grade 1½ miles east of Canastota; and Brown, who was a flagman, was sent back towards Canastota to flag any approaching trains, which duty was not performed successfully so as to arrest the approach of train No. 32, being a passenger train, and it ran into the freight train, and the plaintiff received the injuries of which he complains. Plaintiff's right to recover rested largely upon establishing the incompetency of Brown, and sufficient notoriety of his incompetency to attract the attention of the defendant, and to render it guilty of negligence in keeping him in its employ. The circumstances of the accident are more fully detailed in Park against This Defendant, reported in 85 Hun, 184, 32 N. Y. Supp. 482.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Frank Hiscock, for appellant.
William S. Jenney, for respondent.

HARDIN, P. J.    Extensive evidence was given during the trial of the acts, doings, and character, as established among railroad men, of Brown, with a view of furnishing ground upon which the jury might find that Brown was incompetent as an employé, and that his incompetency was known to the defendant, and that it was, therefore, negligent in keeping him in its employ.    During this trial considerable evidence was given from the minutes of the trial of the Park Case, 85 Hun, 184, 32 N. Y. Supp. 482.    The evidence introduced by the plaintiff of Brown's incompetency was not sufficient to authorize the admission of testimony of his general reputation for the purpose of showing that the defendant was negligent in not knowing that he was incompetent.    Much of the testimony related to acts of Brown, and to his reputation years before the accident.    Van Auken's testimony as to his reputation related to his reputation 10 or 15 years before the accident, when he resided in the city of Schenectady, when he was an attendant at school and at Sabbath school, and before his employment by the defendant.    His reputation at this time and at this place was most unlikely to be known by the defendant, and negligence cannot be imputed to it for not knowing his reputation then and there acquired.    The evidence was received over the defendant's objection, and its reception was error.    The testimony related to acts and reputation which were too remote.    The evidence of the witness Dean, given upon the former trial, was read in evidence.    Dean testified that he had known Brown about 12 years, and that about that time he came onto the railroad on the Troy & Schenectady branch as flagman, and that he was on the witness' train as a substitute sometimes.    The witness testified that he had seen Brown since that time "at long intervals," and that he had heard him

talked about. "Q. Have you heard him talked about as to his mental characteristics? A. I have; that is, not from his mental characteristics, but from a handle, or nickname. Q. You have heard him talked about, then, as to his mental characteristics? A. No; not as to his mental characteristics. Have heard a name given to him. Q. Have you heard a name given to him generally by railroad men? A. I have. Q. You may tell about this nickname,—whether you have heard him generally called by any name; if so, what." Defendant objected to the question as "immaterial, incompetent, not competent in the way of notice to the defendant of any disqualification or incapacity in Brown." The objections were overruled, and the defendant took an exception. The witness answered, viz.: "Crazy Brown. He was not called by that name back at the time he worked for me. Not that I remember. Q. When do you know of his being called by that name,—for how long a time?" This was objected to by the defendant, and the court observed: "Take it all under objection." "A. I don't now distinctly remember; but from time to time I have heard it spoken of. Probably as far back as eight or ten years ago; it might be longer. Q. Since that time you have heard him generally talked about as 'Crazy Brown' among railroad men?" The same objection was made to this, and the court said, "You object to the whole, and exception." The answer was, "Among railroad men." The witness Brookings testified that he knew Brown, and that he had known him 10 or 12 years, and that he was employed at De Witt, and while he was there the witness had a good deal to do with him in a number of ways; and the witness added, "He was usually called crazy." That was objected to, but no ruling or exception was taken at the time of the objection. Subsequently the witness testified, "I know he was called a rattlehead." This was objected to, and a motion was made to strike it out, and the case does not disclose what became of the motion. No exception was taken at that point. The witness Peter Gleason, who had been in the employ of the railroad some 35 years prior to the strike, which occurred in 1890, testified that he was somewhat acquainted with Brown, and that he had worked on the witness' train "two or three times in all. * * * Q. By what name was he known?" This was objected to on the ground that it is improper, incompetent, and immaterial. The objections were overruled, and the defendant took an exception. "A. Knew him as 'Crazy Brown.' Q. Since you have known him, what has been his general reputation as to mental condition? What was his general reputation as to mental capacity?" The question was objected to on the grounds mentioned, and on the further ground "the witness is not an expert, upon the ground it appears the witness has not seen him but once in eight or ten years." The objections were overruled, and an exception was taken. The answer given by the witness was: "Too wild; too rattleheaded; couldn't depend really upon him,—that is, without you saw him." The defendant immediately objected again to the evidence, and moved to strike it out on the grounds stated in the objections to the questions, and the

court declined to strike it out, and the defendant took an exception. Somewhat similar evidence was given where no exceptions were taken.

At the close of the body of the charge the court was asked to charge "that the evidence of the names that Brown was known or called by, and the reputation it is testified he had, neither of them are to be considered by the jury as proving that previous to the accident in question he had been guilty of any negligence whatever in the discharge of his duties." In response thereto the court said: "I charge that. Those things are offered upon the question of notice. They are received upon the question of notice, as I stated in my charge." Thereupon the court was asked "to charge the further fact that the jury must find Brown to have been guilty of specific negligence in the discharge of his duty as flagman or brakeman before the night in question, to charge the defendant with negligence." Thereupon the court replied: "Of course, if they rely upon specific acts at all, they must be acts prior to this accident." Some further colloquy occurred between the counsel and the court, and the court observed: "As a general proposition, I suppose if you can prove that a man was a lunatic or idiot, that would be competent upon the fact whether he was a competent or proper employé, although he had not worked for a railroad, and had not been guilty actually of specific acts of incompetency." The court charged affirmatively that the jury "in determining whether it was negligent on the part of the company to keep him are confined to those things alone, but they may consider, in addition to any acts of negligence he has been guilty of, any other evidence in the case bearing upon his mental condition or his competency." As soon as that language fell from the court, the counsel for the defendant said, "So far as that is concerned, I except." We think the reception of the evidence to which we have referred, in view of the manner in which it was dealt with by the learned trial judge, and the exceptions which we have stated in respect to the receiving of the evidence and the charge in respect thereto, to which exceptions were taken, present error. The jury was not left uninfluenced by the evidence of nicknames and appellations which had been applied to Brown. The reception of the evidence was, therefore, prejudicial error. Marrinan v. Railroad Co. (Sup.) 43 N. Y. Supp. 606; Cameron v. Railroad Co., 145 N. Y. 400, 40 N. E. 1. The exceptions to which we have referred present different questions from those considered by the court in Park v. Railroad Co., 85 Hun, 184, 32 N. Y. Supp. 482. The foregoing views lead to the conclusion that a new trial should be ordered.

Judgment and order reversed, and a new trial ordered, with costs to abide the event. All concur.