Charles Arthur POTE,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 83–245.

Supreme Court of Wyoming.

Feb. 14, 1985.

618

Leonard D. Munker, State Public Defender, Sylvia Lee Hackl, and Martin J. McClain, Appellate Counsels, and Denise Nau, Asst. Appellate Counsel, Wyoming Public Defender Program, Cheyenne, for appellant. Appellant filed a brief pro se.

A.G. McClintock, Atty. Gen., Gerald Stack, Deputy Atty. Gen., Crim. Div., John W. Renneisen, Senior Asst. Atty. Gen., and Michael A. Blonigen, Asst. Atty. Gen., Cheyenne, for appellee.

Before THOMAS, C.J., ROONEY, BROWN and CARDINE, JJ., and HANSCUM, District Judge.

BROWN, Justice.

Appellant Charles Arthur Pote was convicted of numerous crimes by a Park County jury. Criminal activity involving appellant stemmed from a fracas in a Cody bar. The imbroglio involved appellant, his two associates, a barkeep and several bar habitues. One of appellant's companions fired shots at various and sundry people in the bar, resulting in a death. Appellant and his entourage made a retrograde maneuver out of the bar, into a stolen car, thence down the highway whilst shooting and being shot at by law enforcement people.

Appellant's counsel raises seven issues: [1]

I

"Whether the trial court erred in admitting evidence concerning Counts VI and VIII, since said offenses involved thefts which occurred outside the State of Wyoming.

II

"Whether the trial court erred in denying Appellant's motion to sever Counts VI, VII, and VIII and to permit separate trials on such counts.

III

"Whether the trial court erred in denying Appellant's motions for suppression of evidence, dismissal and continuance in light of the prosecution's deliberate failure to preserve evidence and to promptly comply with the pre-trial discovery order.

IV

"Whether the trial court erred in denying Appellant's motion for change of venue, which motion alleged *inter alia* that extensive pre-trial publicity made it impossible to select a fair and impartial jury in Park County.

V

"Whether the trial court erred in admitting into evidence the testimony of two previously-hypnotized witnesses.

VI

"Whether the trial court erred in not vacating Appellant's habitual criminal 'conviction.'

VII

"Whether the trial court erred in sentencing Appellant to maximum terms and then failing to give Appellant full credit

---

1. Since appellant's arrest, up to and including his appeal, he has alternately tolerated assigned counsel's representation and expressed dissatisfaction. During a period of dissatisfaction this court permitted appellant to file a supplemental brief pro se. In his supplemental brief appellant raised five additional issues which we will address in part VIII of this opinion.

against those maximum terms for all time spent in pre-sentence custody."

Appellant Charles Arthur Pote, Connie Zierke Pote and Steve Alloway, with guns in their possession, drove into Cody, Wyoming, in a Plymouth Reliant. At trial there was evidence that appellant had been involved in the theft of the automobile and the guns in Oregon and Washington in the middle of April, 1983.

Early in the morning of April 26, 1983, appellant and his two associates entered the Silver Dollar Bar in Cody. Pote and Alloway became involved in an exchange of pleasantries with local frequenters of the saloon. An angry dispute escalated; thereupon appellant and Alloway exhibited guns. Appellant and his two companions retired from the bar while Alloway fired numerous shots, and appellant, with weapon drawn, menaced people in the bar. Ron Jensen was shot and killed by one of appellant's companions. Connie Pote and Alloway rode as passengers, and appellant drove the Plymouth Reliant in a westerly direction with police officers in pursuit. Numerous shots were fired from both sides of the Pote vehicle, eventually disabling the police automobile. Appellant and his people proceeded west of Cody and entered a cabin owned by Evelyn Lewis. Later appellant and his companions surrendered to the Cody police department and the Park County sheriff's office. The police officers found four guns inside the Lewis cabin, and the Plymouth Reliant automobile, which was concealed near the cabin.

Appellant was initially charged with seven felonies as follows:

Count I: Aiding and abetting the second-degree murder of Ron Jensen, § 6–4–104, W.S.1977.

Count II: Aiding and abetting the attempted second-degree murder of Robert Ellis, § 6–4–104, W.S.1977.

Count III: Unlawful possession of a dangerous weapon with intent to threaten Daniel Brasher, § 6–11–101, W.S.1977.

Count IV: Aggravated assault and battery with a dangerous weapon upon the patrons and bartender of the Silver Dollar Bar, § 6–4–506(b), W.S.1977.

Count V: Attempted first-degree murder of Cody police officer Stan Peglow, § 6–4–101, W.S.1977.

Count VI: Concealing stolen goods, § 6–7–304, W.S.1977.

Count VII: Burglary, § 6–7–201, W.S. 1977.

An amended complaint charged two additional crimes. Count VIII charged appellant with a second count of concealing stolen goods; and Count IX alleged that appellant was an habitual criminal, as defined in § 6–1–109, W.S.1977. Appellant was bound over to the district court on all nine counts and an information was filed accordingly.

The jury found appellant guilty as charged on Counts I, II, III, V, VI and VIII, and guilty of the lesser offense of criminal trespass on Count VII. Count IV was dismissed during the trial. The jury heard evidence on Count IX, the habitual criminal allegation. The jury found that appellant was an habitual criminal in light of his two previous felony convictions.

Appellant was sentenced as follows:

Count I, aiding and abetting second-degree murder, in violation of § 6–4–104, W.S.1977. Count II, aiding and abetting attempted second-degree murder, in violation of § 6–4–104, W.S.1977. Count III, unlawful possession of deadly weapon with intent to threaten, in violation of § 6–1–101, W.S.1977, a single sentence of life imprisonment at the Wyoming State Penitentiary, with eligibility for parole after serving twenty-five years and a fine of $1,000.

Count V, attempted first-degree murder of a police officer, in violation of § 6–4–101, W.S.1977, a sentence of life imprisonment without parole, such sentence to be served consecutive to the sentence imposed on Counts I, II and III, and a fine of $1,000.

Count VI, concealing stolen goods, in violation of § 6–7–304, W.S.1977. Count VIII, concealing stolen goods, in violation of § 6–7–304, W.S.1977, a single sentence

of ten years at the Wyoming State Penitentiary, with eligibility for parole after having served seven years and six months, said sentence to be served consecutive to the sentences previously imposed, and a fine of $1,000.

Count VII, criminal trespass, a sentence of three months in the Park County jail in Cody, Wyoming, and a fine of $750. Appellant received 92 days credit against this sentence.

Appellant was also given sixty-five days credit "against all the minimum and against the fixed period maximum sentences" imposed on the felony counts. The court also ordered appellant to reimburse the state for his attorneys' and investigators' fees, and to work off any unpaid fines by serving additional time in prison "at the statutory rate."

I

In the first issue on appeal appellant contends "that it was error for the court to admit evidence relating to the out-of-state theft offenses, and that his convictions on Counts VI (automobile) and VIII (guns) are improper."

Appellant was charged with two counts of concealing stolen property defined in § 6–7–304, W.S.1977:

"Whoever buys, receives, conceals or aids in the concealment of anything of value, which has been stolen, embezzled or obtained by false pretense, knowing the same to have been stolen, embezzled or obtained by false pretense, shall, if the goods are of the value of one hundred dollars ($100.00) or upwards, suffer the punishment prescribed for grand larceny, and if the goods are worth less than one hundred dollars ($100.00), shall suffer the punishment prescribed for petit larceny."

The trial court instructed the jury that the elements of the offense charged in Count VI of the information were:

"1. That the defendant, Charles Arthur Pote

"2. concealed, or aided in the concealment

"3. of property having a value greater than $3,000, particularly a brown Plymouth Reliant automobile,

"4. which had been stolen,

"5. knowing the same to have been stolen;

"6. all in Park County, Wyoming,

"7. on April 26, 1983."

The court's instruction on the elements of the offenses charged in Count VIII of the information were identical to the charge on Count VI except element No. 3 made reference to the guns. Under the instructions of the court the state was required to prove that the automobile and guns were stolen. Furthermore, the state had the burden to prove that appellant knew that these items had been stolen. The strongest possible evidence to prove that the automobile and guns were stolen was to show that appellant was involved in the thefts. Therefore, evidence of out-of-state thefts was highly relevant, and it was not error to admit such into evidence. There is no merit to appellant's objection to evidence related to out-of-state thefts.

In both Count VI (automobile) and Count VIII (guns) of the information, appellant was charged in the language of the statute, that is, (appellant) "did * * * *receive, conceal or aid in the concealment.* * * * *" (Emphasis added.)

Appellant cites considerable authority to the effect that a thief cannot be convicted of receiving property that he had initially stolen. This may be correct, but the state's case against appellant in Counts VI and VIII is concealment of a stolen automobile and guns, not receiving stolen property. The state's focus on concealment is evident from the bill of particulars, opening statement, proofs and instructions to the jury.

Appellant does not contend that a perpetrator of larceny cannot also be convicted of concealing the property he stole. In fact appellant cites us cases in support of a thief being convicted of concealing property that he stole. *State v. Para,* 120 Ariz. 26, 583 P.2d 1346 (1978); *Sutton v. Commonwealth,* Ky., 623 S.W.2d 879 (1981);

*State v. McPherson*, 250 Or. 601, 444 P.2d 5 (1968). In *Tageant v. State*, Wyo., 673 P.2d 651 (1983), there was strong evidence that Tageant had committed certain thefts. He was, nevertheless, convicted on one count of concealing the same property.

Finally, in this first assignment of error appellant says, "In the usual case, the concealment is in effect a continuing larceny—a deliberate action to deprive the rightful owner of his property. In this case, however, the 'concealment' alleged by the State was of an entirely different non-larcenous nature." Appellant makes a novel argument that the concealment here was not the type of concealment proscribed by the statute. However, he cites no authority nor does he make any cogent argument in support of this theory; therefore, we need not address this matter in detail. *Britton v. State*, Wyo., 643 P.2d 935 (1982).

██ Wyoming's concealment statute, § 6–7–304, W.S.1977, is not as narrow as appellant suggests. The Plymouth Reliant was concealed near the Lewis cabin with brush and debris. There was evidence that the guns were concealed on appellant's person, in the car and in the Lewis cabin. We hold that Wyoming's statute on concealment proscribed the manner of concealment in this case.

## II

In appellant's second assignment of error he contends that Counts VI, VII and VIII of the information should have been severed and separate trials had on those counts. These counts involve property offenses (two concealment charges and one burglary) and appellant contends that they were fundamentally different from the offenses against the person charged in the other five counts of the information. Additionally, appellant argues that "The sheer mass of evidence introduced on the multitude of charges against appellant irreparably prejudiced his right to a fair trial."

Rule 11(a), Wyoming Rules of Criminal Procedure governs the joinder of offenses in one information and provides:

"Two (2) or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction, or on two (2) or more acts or transactions connected together or constituting part of a common scheme or plan."

██ Generally, joinder of offenses is proper, absent compelling reasons for severance. *Linn v. State*, Wyo., 505 P.2d 1270 (1973), cert. denied sub nom. *Lucas v. Wyoming*, 411 U.S. 983, 93 S.Ct. 2277, 36 L.Ed.2d 959, reh. denied 412 U.S. 944, 93 S.Ct. 2780, 37 L.Ed.2d 405 (1973).

" * * * Joint trials serve the public interest by expediting the administration of justice, reducing docket congestion, conserving judicial time as well as that of jurors along with avoiding the recall of witnesses to duplicate their performances." *Jasch v. State*, Wyo., 563 P.2d 1327, 1335 (1977).

Granting or denying a motion for severance is discretionary with the trial court. *Jasch v. State*, supra.

██ Rule 11(a), W.R.Cr.P., provides for joinder when the offenses arise out of "two (2) or more acts or transactions connected together. * * *" The connection in this case is clear and easy to understand. The concealed guns played a prominent part in the murder count and the several assault counts. The concealment of the car and burglary count were connected with the flight of appellant and his associates from the scene of the shooting. We hold that Rule 11(a) permits joinder of the several offenses in this case.

██ Even if joinder is permissible under Rule 11(a), we must also examine the facts here, applying Rule 13, W.R.Cr.P., and determine if a severance should have been granted. Rule 13 provides:

"If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information, or by such joinder for trial together, the court may order an

election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. * * * "

 In *United States v. Harris*, 458 F.2d 670, 673 (5th Cir.1972), cert. denied sub nom. *Scott v. United States*, 409 U.S. 888, 93 S.Ct. 195, 34 L.Ed.2d 145, (1972), the court acknowledged the general rules regarding severance:

" * * * If, as a practical matter, the natures of the offense or of the evidence are of such a character or are so complicated that a jury could not reasonably be expected to separate the indictments or the defendants and to evaluate the evidence properly and individually against each separate defendant on each separate charge, then the trial judge should sever the trials. * * * "

Generally, a denial of a motion for severance is a matter of discretion with the trial court and will not be reversed except for a clear abuse of discretion. The burden was on the appellant here to present facts demonstrating that prejudice resulted from the trial of several offenses and denied him fair trial. *Dobbins v. State*, Wyo., 483 P.2d 255 (1971). Appellant did not meet this burden. A naked assertion of prejudice is insufficient; likewise, an assertion that the sheer mass of evidence created prejudice is not persuasive.

 We held in the first part of this section that a joinder of the several offenses was proper because of their interrelation. Furthermore, the facts of this case were uncomplicated and relatively easy to understand. There was no indication that the jury could not separate the evidence in support of one crime from the evidence in support of other crimes charged.

In giving the instructions the trial court carefully defined in clear and understandable language each crime charged and the necessary proofs that the state must make. The jury was specifically instructed that each charge must be considered separately. The trial court did not abuse its discretion in denying a motion to sever the various counts in the information.

## III

In the third issue on appeal appellant contends that evidence should have been suppressed, the case against him dismissed or a continuance granted because the state did not promptly comply with the pre-trial discovery order.

In ruling on appellant's pre-trial discovery motion the court ordered the state to open its file to the appellant. The state was reluctant to comply with this order and continued to argue with the court about it. The state's hesitancy to obey the court's order is not commendable, and the most charitable characterization of the state's conduct is that it did not obey the court's order promptly.

 At 11:30 a.m. the day trial began the trial judge received a six-page letter from assigned standby counsel. The letter set out in detail the difficulty that Pote and his counsel had experienced in dealing with the police and prosecutor. The main complaint was that witnesses would not talk to them on instructions from the police or prosecutor. Also, it was alleged in the letter that they had not been able to obtain certain reports, letters and statements. These numerous complaints were untimely; however, standby counsel cannot be faulted since he did not know up to the time of trial whether appellant would allow the public defender to represent him.

A complicating factor in pre-trial discovery (also at trial and on appeal) was that the state was not sure who it was supposed to communicate with. The office of the public defender was appointed stand-by counsel in the beginning and was always available to appellant. However, appellant persisted with the notion that he wanted to represent himself. The public defender's office did not know the morning of trial whether Pote would allow the public defender's office to represent him. Appellant finally consented to representation by the public defender's office.

In his brief appellant's counsel reminded this court that the prosecuting attorney has

a duty to see that a defendant has a fair trial and a duty to disclose and preserve evidence. Counsel cites us numerous cases that recite broad constitutional principles regarding a fair trial, the state's duty to make discovery, suppression and destruction of evidence. The deficiency in appellant's argument is that these broad constitutional principles are never applied to the facts in the case before us. The only specific matter that appellant addressed is the vehicle that the police used in pursuing him and his associates. The vehicle was damaged in the chase, then repaired, and the damaged parts lost or destroyed.

Recently the United States Supreme Court addressed the prosecutor's duty to preserve evidence and identified factors to be considered to see if a defendant's right to a fair trial was violated. In *California v. Trombetta*, — U.S. —, 104 S.Ct. 2528, 81 L.Ed.2d 413, 422 (1984), the court said:

"* * * Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, see *United States v. Agurs*, 427 U.S. [97] at 109–110, 49 L.Ed.2d 342, 96 S.Ct. 2392 [at 2400–2401 (1976)] evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means * * *."

Appellant never told the trial court nor this court what evidence the patrol car may have provided for his defense. He does not contend that anything about the vehicle was exculpatory or that the car was apparently exculpatory to the prosecution. Photographs of the vehicle were taken and admitted into evidence without objection. We do not have the slightest idea what evidentiary purpose appellant wanted to use the vehicle for.

Appellant's summary of the law on the prosecutor's duty to insure a fair trial and disclose and preserve evidence is well written and supported by impeccable authority; however, we fail to see how those noble principles apply here. Appellant has not told us of any way he was inhibited from discovering or presenting evidence. He does not complain that the state produced any surprise witnesses or evidence, nor does he suggest that he was impaired in his ability to cross-examine the state's witnesses because of tardy discovery.

Appellant contends that "The cumulative effect of these actions (denial of fair trial and failure to disclose and preserve evidence) violated fundamental principles of due process." We have never been much impressed with a naked allegation of cumulative error. See *Shaffer v. State*, Wyo., 640 P.2d 88, 31 A.L.R.4th 166 (1982).

■ In summary, appellant has not shown any advantage the state gained by late disclosure nor has he shown how he was disadvantaged. While the prosecutor's conduct regarding discovery was not exemplary, appellant has failed to show a single instance of how he was prejudiced or inhibited in presenting his defense. Appellant has argued lofty constitutional principles in a vacuum.

IV

■ Appellant made two motions for a change of venue, alleging that he could not get a fair trial because of pre-trial publicity. His motions were denied. Ordinarily the prosecution is to be conducted in the county where the offense is alleged to have been committed. Art. 1, § 10, Wyoming Constitution; and Rule 21, W.R.Cr.P. Rule 23(a), W.R.Cr.P., provides that venue may be changed if there exists prejudice against the defendant so great that he cannot obtain a fair and impartial trial in the county where the offense occurred. It is the burden of a defendant to show that prejudice is so great that it precludes a fair trial. *Collins v. State*, Wyo., 589 P.2d 1283 (1979). The defendant must show actual prejudice in the minds of the prospective jurors. *Wilcox v. State*, Wyo., 670 P.2d 1116 (1983).

The trial judge should consider the totality of the circumstances in deciding whether the defendant's right to a fair trial can be preserved. *Weddle v. State*, Wyo., 621 P.2d 231 (1980). Since a court's ruling on a motion for a change of venue is the result of a factual determination, it will not be overturned unless it is clearly erroneous. *Chavez v. State*, Wyo., 604 P.2d 1341 (1980), cert. denied 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980). A court's ruling on a motion for a change of venue is subject to review only for an abuse of discretion. *Murray v. State*, Wyo., 671 P.2d 320 (1983). The most significant indication of prejudice or lack of prejudice is revealed upon voir dire examination of the jury panel. *Shaffer v. State*, supra.

In determining whether a change of venue should have been granted we consider the nature and extent of publicity. We also consider the difficulty or ease in selecting a jury and whether the prejudice claimed actually appears during jury selection. *Murray v. State*, supra.

In support of his motions for a change of venue appellant presented to the trial judge seventeen newspaper articles from April 27, 1983 to June 24, 1983. These articles were from two Park County newspapers and a Montana newspaper. Appellant does not point out anything in these articles that is nonfactual, inflammatory or prejudicial. There were no editorials suggesting guilt. The "Editorial type cartoon" referred to in appellant's brief makes no reference to appellant. "Extensive news coverage does not automatically require a change of venue." *Shaffer v. State*, supra, at 103. Appellant refers us to *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), and *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543, reh. denied 382 U.S. 875, 86 S.Ct. 18, 15 L.Ed.2d 118 (1965), for the proposition that the publicity so pervaded the proceeding here as to give rise to a presumption of prejudice against the defendant. These cases are factually entirely different. Those trials were conducted in an atmosphere of a "Roman holiday." Nothing like that happened here.

As would be expected, most of the jury panel had heard about this case; however, there is no requirement that a juror be ignorant of the facts and issues involved in a case. *Chavez v. State*, supra. Contrary to the contention of appellant, there was no great difficulty in selecting a jury. Part of the voir dire was conducted individually in chambers as a precaution against contaminating the panel, and the jury was impaneled in less than a day and one-half. Appellant tells us that there were fifteen jurors challenged for cause and several challenges denied. Those excused had preconceived opinions about the case.

Appellant does not contend on appeal that the jurors not excused should have been excused or that the judge abused his discretion in not excusing certain jurors. Appellant seems to argue that because of the number excused for cause it was demonstrated that there was deep community sentiment and prejudice against him.

We do not know that fifteen jurors is an unusual number to be excused for cause in this type of case. Even if fifteen is a large number, that alone is not significant. There is no indication that the fifteen reflected the opinions and attitudes of the other members of the jury panel or that the fifteen excused jurors influenced the remaining panel members. *U.S. v. Faul*, CA 8, 748 F.2d 1204 (1984). Appellant has not demonstrated that there was prejudice against him in Park County so great that he could not obtain a fair and impartial trial. The judge did not abuse his discretion in not granting a change of venue.

V

Two Cody police officers who had been hypnotized testified at trial. On appeal appellant objects to this testimony on the basis of inadequate pretrial disclosure of the hypnotic sessions, and also that his right of confrontation was violated.

The record does not clearly indicate when appellant became aware that two police officers had been hypnotized. He knew about it before the state's case in chief commenced, but we do not know exactly how much advance notice he had. The record is not entirely clear, but apparently appellant had the officers' reports of the incident as reference was made to the reports when one of the officers was being cross-examined.

In the hypnotic session involving officer Gene P. Plambeck an attempt was made to tape the session, but the tape did not record. The hypnotic session of officer Stanley Peglow was taped. Appellant was furnished a partial transcript of the tape, but the actual tape was not located for use at the trial. Appellant does not charge the state with suppressing evidence, nor is there any indication that evidence was suppressed. Appellant argues that there was an inadequate disclosure. He contends that the state did not comply with *Gee v. State,* Wyo., 662 P.2d 103 (1983), by arguing that Gee requires the state to notify a defendant that a witness has been hypnotized and furnish the defendant with statements and evidence relative to the hypnosis.

▮ Appellant became aware that two witnesses had been hypnotized before trial. He received a partial transcript of one of the hypnotic sessions, and he also had the officers' report regarding the incident that gave rise to the criminal charges. Appellant had all the statements and evidence relative to the hypnosis that was available. *Gee v. State,* supra, does not require that the state produce tapes and transcripts of the hypnotic sessions. In summary, Gee requires that evidence be preserved but not that evidence be created.

This case is similar to *Chapman v. State,* Wyo., 638 P.2d 1280 (1982). In *Chapman* tapes were made of a hypnotic session, but were inaudible. This court held that hypnotically induced testimony was nevertheless admissible since defense counsel had other adequate means to determine what happened at the hypnotic ses-

sion. In this case the officers were cross-examined in detail, and their reports were available to impeach them if their in-court testimony differed from their reports.

We hold that under Wyoming law as articulated in the *Chapman* and *Gee* cases, appellant's right to confront witnesses was not violated.

In *Gee* this court further emphasized what we had said in *Chapman,* holding that "[a]n attack on credibility is the proper method to determine the value of the testimony of a previously hypnotized witness rather than an attack on the competency of such testimony." The credibility of the witnesses who had previously been hypnotized was attacked in this case by cross-examination and also by the use of the partial transcript of one hypnotic session and the reports of the officers.

▮ It is significant to note that actually there was no hypnotically induced testimony admitted at trial here. Extensive cross-examination revealed that hypnosis had not enhanced the memory of the officers who testified at trial nor had there been any alteration in·their testimony at trial compared to their reports. Hypnosis had no effect on the officers' testimony one way or another. We find no error in allowing officers Plambeck and Peglow to testify.

## VI

In the second part of a bifurcated trial the jury determined that appellant was an habitual criminal. At sentencing the court recognized that the current habitual criminal statute, § 6–10–201, et seq., W.S.1977 (June 1983 Replacement), was controlling, but that under the facts of this case the habitual criminal statute had no application. The sentences finally imposed did not reflect an enhanced sentence nor were they influenced in any way by the habitual criminal statute.

▮ Appellant asks us to address several interesting questions about the habitual criminal statute and its application to the facts of this case. Because the trial court

determined that the habitual criminal statute was inappropriate in this case and did not enhance any sentences, we deem the issues raised by appellant to be moot.

■ Appellant contends that the trial court "should have directed a judgment of acquittal as to the habitual criminal guilty verdict." The jury's finding that appellant was an habitual criminal did not make him guilty of any crime. "[B]eing an habitual criminal is not a crime—it is a status." *Schuler v. State*, Wyo., 668 P.2d 1333 (1983); and *Evans v. State*, Wyo., 655 P.2d 1214 (1982). An habitual criminal status is significant only in sentencing.

■ The trial court's determination that a sentence under the habitual criminal statute was inappropriate, effectively nullified the jury's determination that appellant was an habitual criminal.

## VII

Appellant was convicted of six felonies and one misdemeanor and received four separate sentences. The court considered several of the offenses to have merged, resulting in single sentences.

The court imposed a single sentence of life imprisonment, with eligibility for parole after serving twenty-five years and a fine of $1,000, for Counts I, II and III, the aiding and abetting second-degree murder charge, the aiding and abetting attempted second degree murder charge, and the unlawful possession of a deadly weapon with intent to threaten charge. For Count V, the attempted first-degree murder of a police officer, the court imposed a sentence of life imprisonment without parole, such sentence to be served consecutive to the previous life sentence, and a fine of $1,000. The court imposed a single sentence of ten years imprisonment, with eligibility for parole after seven years and six months, and a fine of $1,000, for the two concealment crimes, Counts VI and VIII. In each instance, the sentence imposed was the maximum permitted by law for the offense involved. The court also ordered that appellant serve three months and pay a fine of

$750 on the misdemeanor criminal trespass count.

The court noted that appellant had spent 157 days in pre-sentence custody, and ordered that 92 of those days be credited against the three-month criminal trespass sentence. The remaining 65 days were credited "against all the minimum and against the fixed period maximum sentences" imposed for the felony offenses.

On appeal, appellant contends that the trial court erred in not granting credit against the maximum sentences imposed for the entire time he spent in pre-sentence custody.

The seventh issue raised by appellant is governed by our holding in *Jones v. State*, Wyo., 602 P.2d 378, 381 (1979):

"* * * We hold that a trial judge has discretion to deny or grant credit for time served in pre-sentence custody where: (1) the pre-sentence custody is not due to the defendant's indigency, and (2) the sum of the time spent in pre-sentence custody plus the sentence does not exceed the maximum allowable sentence."

We will not be concerned with whether appellant was indigent prior to sentencing. The trial court found specifically that he was not, yet he was represented at trial and on appeal by the office of the public defender. Our concern is whether the sum of the time spent in pre-sentence custody plus the sentence exceeds the maximum allowable sentence.

We cannot see how receiving credit for time served makes any sense on a life sentence. If appellant were to receive 157 days credit on his first life sentence, as he insists he should, he would still have a life sentence to serve. If he were to receive 157 days credit on each of his two consecutive life sentences he would still have two consecutive life sentences to serve. Appellant's argument for receiving credit for time served on a life sentence is sophistry.

■ On the two concealment crimes, Counts VI and VIII, the court imposed a single maximum sentence of ten years of

imprisonment. This sentence was the statutory maximum. One hundred fifty-seven days spent in pre-trial confinement plus the ten year sentence exceeds the statutory limit of ten years. Therefore, appellant is technically entitled to receive a full 157 days credit on the upper limits of his sentence for concealing stolen property. Although not practical, the result of our determination is that after appellant has served two consecutive life sentences he will be entitled to 157 days credit on his maximum ten year sentence. In order to comport with *Jones v. State*, supra, we direct the trial court to modify the judgment and sentence to give appellant a full 157 days credit on his ten year sentence.

### VIII

Appellant raises five additional issues, pro se:

A. "Whether the trial court erred in letting the Appellant's trial continue when there was reasonable cause to believe that Appellant was incompetent.

B. "Whether the Park County Prosecutor unduly and unethically denied Appellant his right to a fair trial influencing the Jurors to regard Appellant as being 'unholy' and acquainting Appellant to 'satan' and thereby conferring upon the Prosecution the correlative position that 'they' (the Prosecution) were on the side of God.

C. "Whether the trial Court erred in denying Appellant's motion challenging the entire panel as being unconstitutional.

D. "Whether there was reversable error committed, in that the Deputy Prosecutor was not a member of the Wyoming Bar and the trial Court ordered the Public Defender to violate Rule 20 of the Ethical Standards.

E. "Whether the Trial Court erred by not disqualifying himself for prejudice, upon motion of the Appellant and the State."

### A

Pote contends that during the course of the trial it became obvious that there was a problem with his competency and that the trial should have been discontinued. Section 7–11–303(a), W.S.1977, provides:

"If it appears at any stage of a criminal proceeding, by motion or upon the court's own motion, that there is reasonable cause to believe that the accused has a mental illness or deficiency making him unfit to proceed, any further proceedings shall be suspended. * * *"

In support of appellant's contention that he may have been incompetent he directs our attention to dialogue between him and his defense lawyer at the instruction conference.

Defense counsel:

"You must admit the fact that you are crazy."

Mr. Pote:

"Well, yeah that's true." [2]

At the instruction conference appellant mentioned that he had been in a mental institution. In further support of his incompetency contention appellant directs our attention to his "running battle with the public defender's office," and his desire that he proceed pro se. He further complains about his treatment in the Park County jail and a painful tooth condition. He says, "The cumulative effect of * * * the 'maltreatment' was to induce temporary insanity."

At no time did appellant claim lack of capacity to stand trial as provided for in § 7–11–302, W.S.1977, nor did he enter a plea of not guilty by reason of mental illness or deficiency, according to § 7–11–304(d), W.S.1977. So far as we can tell, neither the public defender's office nor Pote made a motion or request that the trial be discontinued. Pote does not bring to our attention any authority in support of this contention nor is his argument convincing.

2. It was held in *Baird v. New York Cent. & H.R.R. Co.*, 44 N.Y.S. 926, 16 A.D. 490 (1897), that the fact that a person is nicknamed "Crazy" is not evidence that he is a lunatic.

At the instruction conference the trial judge summed up Mr. Pote's mental condition as follows:

"And the court has not ever and does not now know of any apparent symptoms that would suggest mental illness or mental incompetency or irresistible mental personality traits and so forth. On the contrary, the Court would observe that the Defendant is very stable, he might be uneducated in school formally, but he has a very great and tremendous perception and insight and ability to comprehend, to understand, and to analyze, to anticipate rather fairly complex legal concepts that many lawyers are not able to comprehend or handle with a dexterity that he does. He has an ability to not only anticipate but then to design evasive and parrying type actions; and at the same time, to comprehend and prepare for a secondary course of action in case the primary course of action does not seem to achieve the end that he wants. He thinks quickly on his feet, he thinks quickly when under challenge, as if he might have one day been an expert chess player, and the techniques of chess if he is well adapted to other pursuits in life, particularly to manipulation and legal procedures. And so this Court finds him to be astute and competent."

We cannot disagree with that determination, and would add that appellant's pro se brief is better than some we have seen.

### B

In his closing argument the prosecutor referred to appellant as the leader of the "Unholy Trinity." [3] No objection was made at trial to this characterization, but appellant objects on appeal. The prosecutor also referred to appellant as the "Patriarch." Apparently appellant is comfortable with the appellation "Patriarch." At least this is about the only thing he does not complain about.

In his pro se brief appellant makes a one page argument to the effect that characterizing him as the leader of an "Un-

holy Trinity" raises a separation of church and state issue. We cannot make any sense out of appellant's separation of church and state argument.

The most that can be said for the prosecutor's characterization of appellant is that it may have been a poor choice of words. In *Ostrowski v. State*, Wyo., 665 P.2d 471 (1983), the prosecutor characterized defendant as a criminal. In that case we said the characterization was "ill-considered" and "improper," but did not require a reversal. Likewise there is no reversible error in this case.

In appellant's one page argument on separation of church and state he objects to a letter sent to him by the prosecuting attorney after his conviction and incarceration. This letter was sent on the county attorney's letterhead, and the stationery had a quotation from Isaiah on it. The letter quoted extensively from the new testament and strongly urged appellant to repent. We do not wish to discourage those who cry repentence, but we remind the county attorney of the separation of the offices of prosecuting attorney and prison chaplain.

### C

Prior to trial appellant challenged the entire jury panel because it did not include felons. He asserts that because felons were excluded from the jury it was unconstitutionally selected.

Section 6–10–106, W.S.1977, provides that a person convicted of a felony is incompetent to be a juror. Appellant contends that this statute is unconstitutional. Appellant refers us to the 13th and 15th amendments to the United States Constitution, but does not relate those amendments to the facts or legal issues of this case.

In *Meyer v. Kendig*, Wyo., 641 P.2d 1235, 1238–1239, (1982), we said:

"When the constitutionality of a statute is assailed, we are governed by the following standards:

---

3. The Trinity alluded to was appellant, Connie Zieke Pote and Steve Alloway.

" 'Statutes are presumed to be constitutional unless affirmatively shown to be otherwise, and one who would deny the constitutionality of a statute has a heavy burden. The alleged unconstitutionality must be clearly and exactly shown beyond any reasonable doubt. [Citation.] One who assails a classification must carry the burden of showing that it does not rest on a reasonable basis, but is essentially arbitrary, and if any state of facts can be reasonably conceived which sustain the classification, such facts will be assumed. [Citations.]'

" 'Courts have a duty to uphold the constitutionality of statutes which the legislature has enacted if that is at all possible, and any doubt must be resolved in favor of constitutionality. [Citations.]' [Citation.]"

Appellant cites no authority nor does he make any logical argument in support of his contention that § 6–10–106, W.S.1977, is unconstitutional. He has totally failed in his burden to demonstrate unconstitutionality.

### D

 Appellant complains that the deputy county attorney, Chris White, was not a member of the Wyoming Bar Association at the time of trial and that Mr. White participated in the trial. The record does not reflect appellant's contention; however, taking judicial notice of our own files and records, we note that Mr. White is currently a member of the Wyoming Bar in good standing, although he had not been admitted at the time of appellant's trial. The circumstances under which Mr. White was permitted to practice in the courts in Park County are not mentioned in the record. Mr. White's alleged unauthorized practice of law was not before the trial court and is not properly before this court. Appellant has not shown how this circumstance prejudiced him.

 Appellant also contends that the public defender, acting in his capacity as advisory counsel or standby counsel for him at and before trial, violated Rule 20, Canon 3, DR 3–101(A), Bar Association Organization and Government. This disciplinary rule provides:

"A lawyer shall not aid a nonlawyer in the practice of law."

This is a spurious contention and does not merit comment.

### E

Appellant's last pro se assignment of error is that the trial judge did not remove himself from the case because of prejudice.

Rule 23(e), W.R.Cr.P., provides:

"(e) Disqualification for cause.—After the time for filing a motion for peremptory disqualification of the presiding judge has expired, the state or the defendant may move for a change of district judge on the ground that the presiding judge is biased or prejudiced against the state, the prosecuting attorney, the defendant or his attorney. The motion shall be supported by an affidavit or affidavits of any person or persons stating sufficient facts to show the existence of such ground together with an affidavit of the prosecuting or defense attorney showing that the facts stated were unknown to him and could not have been discovered by the exercise of reasonable diligence prior to expiration of the time for filing a motion for peremptory disqualification. Prior to hearing on the motion any party may file counter-affidavits. The presiding judge shall rule on the motion, and if he grants the same shall immediately call in another district judge to try the action. A ruling on a motion for a change of district judge shall not be an appealable order, but the ruling shall be entered on the docket and made part of the record, and may be assigned as error in an appeal of the case."

In an affidavit in support of his motion for a change of judge, appellant says Judge Nicholas was prejudiced because Judge Dixon, whom appellant had removed from the case, assigned the case to Judge Nicholas. We cannot follow that reasoning. It would appear that if Judge Nicholas was

annoyed at anyone it would be Judge Dixon for assigning him Pote's case. In the affidavit appellant also talks about adverse pre-trial rulings, forcing upon him standby counsel, failure to answer letters, and a toothache. Affiant further sayeth that he thought the state had disqualified Judge Nicholas. On the strength of this belief Mr. Pote says he asked Judge Nicholas to take over his defense and revealed to him (Judge Nicholas) certain information. Finally, Pote says in his affidavit that if Judge Nicholas was not prejudiced against him before the affidavit, he would be now after reading it.

▮ Appellant's affidavit in support of his motion for a change of judge does not minimally comply with Rule 23(e), W.R. Cr.P. The trial court did not abuse its discretion in denying appellant's motion for a change of judge.

We have carefully examined the seven issues raised on appeal by the public defender and the five issues by appellant pro se. We find no reversible error in this case.

Affirmed.

BROWN, Justice, specially concurring.

In writing for the court I supported Part V of the opinion by referencing *Gee v. State*, Wyo., 662 P.2d 103 (1983), and *Chapman v. State*, Wyo., 638 P.2d 1280 (1982). These two cases set out the law in Wyoming regarding testimony of previously hypnotized witnesses. I dissented in both *Chapman* and *Gee*, and reaffirm my disagreement with those two cases.

I have no problem, however, concluding that the testimony of officers Plambeck and Peglow was properly admitted into evidence in the case here. I make this determination without regard to the authority of *Chapman* and *Gee*. The so-called hypnotism of the two officers was a nullity. Extensive cross-examination revealed that hypnosis had not enhanced or altered the memory of the officers; and hypnosis had no effect on the officers' testimony one way or another.

I repeat the admonition expressed in my dissent in *Chapman*. People who do not know what they are doing ought not "monkey around" with hypnotism lest they jeopardize an important case and cost the state a lot of money. *Chapman* and *Gee* represent a rapidly shrinking minority view and will not live forever. See *People v. Guerra*, 37 Cal.3d 385, 208 Cal.Rptr. 162, 690 P.2d 635 (1984); *State v. Martin*, 101 Wash.2d 713, 684 P.2d 651 (1984); *State v. Laureano*, 101 Wash.2d 745, 682 P.2d 889 (1984); *People v. Rex*, Colo.App., 689 P.2d 669 (1984).

HANSCUM, District Judge, concurring.

I concur in the result reached by the majority affirming the appellant's judgment and conviction. I am compelled, however, to comment upon the allegations raised by the appellant of prosecutorial misconduct which were not detailed in the majority opinion.

The appellant raises several allegations of prosecutorial misconduct which are insufficient to warrant reversal in this case; but it seems the prosecutor was not entirely mindful of the standards by which the prosecutorial function properly should be performed. The prosecutor exhibited an inattentiveness towards many of the standards relating to the prosecution function during the course of proceedings in this case.

The prosecution function is surrounded by the general obligation of the prosecutor to "seek justice, not merely to convict." American Bar Association Standards for Criminal Justice 3–1.1(c) (2d. ed. 1980) (hereinafter referred to as "ABA Standards"). It is this general duty with which the prosecutor in any criminal proceeding is charged.

The prosecutor in this case permitted a deputy county attorney who was not admitted to the Wyoming State Bar to participate in the prosecution. It is axiomatic that the prosecution authority should be vested in a public official. The prosecution function should be performed by a public prosecutor who is a lawyer subject to the

standards of professional conduct and discipline (ABA Standard 3-2.1). Moreover, by statute the county attorney must be a member of the Wyoming State Bar (W.S. 18-3-301, as amended); hence anyone acting on behalf of the county attorney should be qualified in a similar manner. Similarly, the Amended Rules Adopted by the Supreme Court of Wyoming Providing for the Organization and Government of the Bar Association of the Attorneys at Law of the State of Wyoming provide at Rule 19 as follows:

> "No attorney from any other state shall be permitted to enter his appearance in, *prosecute* or defend, any action pending in any court or before any tribunal, commission, board or other governmental agency of the state, whose rulings are subject to review by the courts of this state, unless he shall have associated with him in such action or proceeding an active member of the Wyoming State Bar." (Emphasis added.)

The record on appeal reveals the participation in the prosecution of this case of an individual who was not a member of the Wyoming State Bar. While W.S. 33-5-111 permits the admission of a foreign attorney for all purposes in a particular case provided that he shall have associated with him during the proceeding an active member of the Wyoming State Bar, the record reveals no such admission of the deputy county attorney. See also *Dorador v. State*, Wyo., 573 P.2d 839 (1978). While there is some suggestion that the trial court acquiesced in the deputy county attorney's participation in the prosecution, it has been ruled, "... no court is justified in permitting an appearance before it by persons outside its jurisdiction and control or unaccountable for acts committed in processes before that court...." *Brown v. Riner*, Wyo., 496 P.2d 907, 908 (1972).

In reviewing the record on appeal, however, I am unable to discern or ascertain any showing or prospect of prejudice to the appellant arising in connection with the ultra vires aspect of the prosecution in this regard.

The record on appeal suggests that the prosecuting attorney may have encouraged prosecution witnesses not to discuss possible testimony with the appellant or appellant's counsel. The ABA Standards provide:

> "(c) A prosecutor should not discourage or obstruct communication between prospective witnesses and defense counsel. It is unprofessional conduct for the prosecutor to advise any person or cause any person to be advised to decline to give to the defense information which such person has the right to give." ABA Standard 3-3.1(c).

In the comments to ABA Standard 3-3.1 the reasons for the rule are explored wherein it is stated:

> "Prospective witnesses are not partisans. They should be regarded as impartial and as relating the facts as they see them. Because witnesses do not 'belong' to either party, it is improper for a prosecutor, defense counsel, or anyone acting for either to suggest to a witness that the witness not submit to an interview by opposing counsel. It is not only proper but it may be the duty of the prosecutor and defense counsel to interview any person who may be called as a witness in the case (except that the prosecutor is not entitled to interview a defendant represented by counsel). In the event a witness asks the prosecutor or defense counsel, or a member of their staffs, whether it is proper to submit to an interview by opposing counsel or whether it is obligatory, the witness should be informed that, although there is no legal obligation to submit to an interview, it is proper and may be the duty of both counsel to interview all persons who may be witnesses and that it is in the interest of justice that the witness be available for interview by counsel.

> "Counsel may properly request an opportunity to be present at opposing counsel's interview of a witness, but counsel may not make his or her presence a condition of the interview. It is proper to call the attention of the witness to the

problem of subscribing to a statement prepared by another person. In the event that a written statement is signed or otherwise acknowledged by the witness as a correct representation of facts known to the witness, a copy of the statement should be furnished the witness upon request.

"This standard does not impose any obligation upon a prosecutor to disclose the identity of prospective witnesses. The prosecutor's obligation in this respect is governed by the applicable law pertaining to discovery and the furnishing of the names of witnesses who are intended to be called."

It should be observed that this duty is a "two-way street." It is unprofessional conduct for a defense attorney to advise a person, other than a client, to refuse to give information to the prosecutor or counsel for co-defendants. ABA Standard 4-4.-3(c). The same reasons are advanced in support of the reciprocal obligation of defense counsel to act in congruity with the prosecution standard.

The record on appeal reveals numerous instances in which the prosecutor appeared to evade discovery on the part of the appellant. While it has been said that there is no constitutional right to discovery in a criminal case (*Dobbins v. State*, Wyo., 483 P.2d 255 (1971)) and Rule 18, W.R.Cr.P., limits discovery, it is unprofessional conduct for a prosecutor to intentionally fail to disclose to the defense at the earliest feasible opportunity evidence which would tend to negate the guilt of the accused or mitigate the degree of the offense or reduce the punishment. ABA Standard 3-3.11(a). The Standard further provides that "[t]he prosecutor should comply in good faith with discovery procedures under the applicable law." ABA Standard 3-3.11(b).

Moreover, the constitutional standards of due process require certain disclosures, i.e. of exculpatory materials, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); of evidence regarding complaining witness, *Giles v. Maryland*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); and

of evidence of promise of leniency to a witness, *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The prosecutor may have perceived that the trial judge imposed a greater obligation to disclose information to the defense than the law requires. Yet, the trial judge must be vested with wide discretion in interpreting and applying the appropriate constitutional standards of due process to the particular set of circumstances before the trial court. In the furtherance of due administration of justice, the trial court possesses the inherent power to define the general parameters of discovery in a criminal case. *State ex rel. Mahoney v. Superior Court of Maricopa County*, 78 Ariz. 74, 275 P.2d 887 (1954). It is the obligation of the prosecutor to comply. In this case the prosecutor appeared to evade numerous attempts at discovery by the appellant and appellant's counsel; although, the level of noncompliance does not rise to a sufficient degree as to warrant reversal in this case.

The record on appeal reveals a comment by the prosecution in closing argument that the appellant was a member of an "unholy trinity." The appellant contends that this reference constituted an impermissible injection of religion into the prosecution. While the phrase itself may be given a secular connotation, the question arises as to the permissibility of injecting the element of religion and invoking it on the side of the prosecution. The comments to the ABA Standards categorically disapprove of such remarks. The Commentary of ABA Standard 3-5.8(c) states:

"Arguments that rely on racial, religious, ethnic, political, economic, or other prejudices of the jurors introduce into the trial elements of irrelevance and irrationality that cannot be tolerated...."

While the arguments of counsel in this case could carry religious connotations, the court finds that the use of the phrase carries secular connotations so as to constitute permissible argument and not warrant reversal. This comment in and of itself might be construed as being innocuous if it were not for the later communication be-

 

tween the prosecutor and the appellant which revealed the fervor of the prosecution in this case.

The fervor of which I speak is exemplified by a letter which was written directly to the appellant by the prosecutor. The letter was written after the trial but at a time when the prosecutor knew that the appellant was represented by counsel. Thus, the communication was an unauthorized communication under the Canons of Ethics (See DR 7–104(A)(1)). The tone of the letter, which bears the printed biblical verse on the prosecutor's letterhead, " 'he will not be disheartened or crushed until he has established justice in the earth....' Isaiah 42:4," gives rise to an inference of the messianic zeal of the prosecutor in this case. The letter, which is attached to the supplemental brief of the appellant as Appendix M, is replete with biblical verses and personal opinions of the prosecutor and was improper in form and content. It should not be approved.

All told, I do not find prosecutorial misconduct sufficient to warrant reversal. At the most, it constitutes harmless error. However, the acts of the prosecutor were in several respects improper and were not sufficiently admonished in the majority opinion.