Donald Fong GEE, Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).

No. 5797.

Supreme Court of Wyoming.

April 28, 1983.

Gerald Gallivan, Director, Wyoming Defender Aid Program, Laramie, Sylvia Lee Hackl, Appellate Counsel, Wyoming Public Defender Program, Cheyenne, and Edward F. Hess, Student Intern, Wyoming Defender Aid Program, Laramie, for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Div., and Allen C. Johnson, Sr., Asst. Atty. Gen., and Thomas T.C. Campbell, legal intern, for appellee.

Before ROONEY, C.J., and RAPER, THOMAS, ROSE and BROWN, JJ.

ROONEY, Chief Justice.

Appellant-defendant was found guilty after a jury trial of the crimes of aggravated robbery and unauthorized use of an automobile. He appeals from the resulting judgment and sentence, contending error in failure of appellee to adequately advise him of the fact that one of appellee's witnesses had been hypnotized prior to testifying.

We affirm.

### NECESSITY TO ADVISE APPELLANT OF PRETRIAL HYPNOSIS OF STATE'S WITNESS

■ We recently noted in *Chapman v. State,* Wyo., 638 P.2d 1280, 1284 (1982) that "[a]n attack on credibility is the proper method to determine the value of the testimony of a previously hypnotized witness"

rather than an attack on the competency of such testimony. To make such attack on credibility, the attacking party must of necessity have knowledge of the fact of the pretrial hypnosis of the witness. We will not here repeat that said in *Chapman v. State,* supra, relative to the nature and conditions of hypnosis and the variations therein with respect to different hypnotists and subjects of hypnotism. Suffice it here to say that we emphasized in *Chapman v. State,* supra, that the credibility of a witness could be seriously impaired by hypnosis under certain circumstances inasmuch as:

"The issue relative to the admissibility of testimony of witnesses who were previously hypnotized is whether the product of the hypnosis was to refresh or develop the witness' own recollection or to teach the witness and add additional facts to the recollection beyond that which has been mentally stored in the memory, consciously or unconsciously. The issue is properly one for the fact finder—as are all issues relative to the credibility of the witness." 638 P.2d at 1282.

And we carefully inquired in *Chapman v. State,* supra, as to whether or not the defendant had adequate opportunity to determine and present to the jury the evidence relative to aspects of hypnotism and its use on the particular witness.

Implicit in the *Chapman v. State,* supra, holding is the requirement that the defendant be advised by the State of the fact that a witness had been previously hypnotized and that all statements and proceedings relative thereto be made available to the defendant on request. This requirement goes beyond those concerning discoverable materials for purposes of impeachment, *Hubbard v. State,* Wyo., 618 P.2d 553 (1980), and discoverable statements of witnesses under Rule 18(c)(1), W.R.Cr.P., and *Fitzgerald v. State,* Wyo., 601 P.2d 1015 (1979).

## APPELLANT ADEQUATELY ADVISED OF PRETRIAL HYPNOSIS OF WITNESS IN THIS CASE

Prior to trial in this case, appellant moved for discovery of witnesses, exhibits and all exculpatory material[1] in possession of appellee. The motion was granted with minor exceptions, and the appellee complied with the order. In addition, appellee opened its files to appellant. Included in the material furnished to appellant was a supplemental report concerning the hypnosis of the witness. Appellant's counsel apparently did not completely review the material and did not know that witness Davidson had been hypnotized until the fact was revealed during her testimony. But at the conclusion of the first day of the trial, appellant's counsel listened to the tape recording of Davidson's hypnotic session, and he later examined witness Davidson concerning the hypnosis and her previous testimony. The tape recording was introduced into evidence.

Appellant, thus, was advised prior to trial of the hypnosis session with Davidson. The fact that he had an abbreviated time to review the tape and present his position relative to the credibility of the evidence is attributable to the failure to carefully review that furnished to him by the appellee.

## NATURE OF THE TESTIMONY OF THE PREVIOUS HYPNOTIZED WITNESS

Witness Davidson and three other employees were working in a Casper Safeway store after it closed for the day when a masked gunman appeared and ushered them into a produce cooler while he robbed the store. The gunman entered the cooler several times during the robbery to ask questions concerning the store. His mask (a bandanna) slipped from his face during

---

1. It may be said that the fact of the use of hypnosis and the results thereof were not exculpatory but were, in fact, the contrary, i.e. were evidence of guilt not innocence. But, as reflected in the previous section of this opinion, such must be disclosed, whether or not exculpatory. Exculpatory material may not be suppressed by the state after request for such by the defendant. *Brady v. State of Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Dodge v. State,* Wyo., 562 P.2d 303 (1977).

one of his trips to the cooler. In their testimony, all three employees positively identified appellant as the robber. Witness Davidson also testified that she had seen appellant in the store earlier in the day without a mask. She added nothing as a result of the hypnotic session to the description of appellant which she gave prior to the session, but she said that the hypnosis made her "more confident" of her identification and that she "felt better about it."

Appellant did not move for a continuance for the purpose of securing expert testimony relative to hypnosis. He did move for a mistrial at the close of all of the evidence on the ground that appellant's right to effective assistance of counsel had been jeopardized by lack of notice regarding the hypnotized witness. He now contends denial of the motion to be reversible error.

## CONCLUSION

The fact of hypnosis of witness Davidson was made known to appellant before trial. Pursuant to the thrust of our opinion in *Chapman v. State,* supra, such fact should be made known with specificity in the future. Appellant was afforded the opportunity to review the tape of the hypnotic session and examine relative to the session. The identification factors by the witness did not differ after the session from those before the session. The identification of appellant by witness Davidson was only cumulative to the identification by the other two witnesses. Under these circumstances, we do not find reversible error. See *Campbell v. State,* Wyo., 589 P.2d 358 (1979); *Neilson v. State,* Wyo., 599 P.2d 1326 (1979); *Jones v. State,* Wyo., 568 P.2d 837 (1977); and *Chapman v. State of California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065, reh. denied 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967).

Affirmed.

1. See article, "Hypnotically Refreshed Testimony," 1 Land & Water Law Review, p. 335 (1983).

BROWN, Justice, dissenting, joined by ROSE, J.

I undertake the disconsolate task of differing from the majority, with a feeling that I am probably right.

A dissent has a limited purpose. It is a voice in the wilderness urging repentence, begging or chiding the majority to correct a mistake into which it has been seduced. It may help rescue for another day a principle that is not supported today. It is also an appeal to greater enlightenment tomorrow, a plea to later courts to set things right. A dissenter fancies that he has a sense of history and does not want to associate himself with an opinion that he believes is wrong and has only a short day in the sun. For that reason, I urge the court to overrule *Chapman v. State,* Wyo., 638 P.2d 1280 (1982).[1]

In affirming, the majority relies principally on *Chapman v. State,* supra. I dissented in Chapman and will not repeat all my reasons, but will reemphasize that:

"The admission in evidence of hypnotically enhanced testimony developed by experts is suspect, even under correct scientific procedures. The admission of hypnotically enhanced testimony, developed by a rank amateur absent any scientific procedure is totally unreliable." *Chapman v. State,* supra, at 1287.

"In cases cited by the majority permitting hypnotically enhanced testimony, and in other cases that I have read, the hypnotist had at least a modicum of expertise and employed some verification procedure. Here we have questionable expertise and a total lack of verification. I know of no case that has permitted the admission of hypnotically enhanced testimony with such a total lack of foundation." *Chapman v. State,* supra, at 1292.

Under *Chapman* a hypnotist need not possess any qualifications, have any experience, or employ any verification procedures.[2] It follows, therefore, that a hobo

2. In this case the person hypnotized did not remember the name of the person who had

passing through town or a derelict in the county jail could hypnotize a potential witness, and the witness' testimony would be admissible at trial.[3] According to the holding in *Chapman*, the party who objects to hypnotically enhanced testimony can test its unreliability through cross-examination. An objection to hypnotically enhanced testimony, even testimony enhanced by a person with no skill or training, goes to the weight of the testimony, and not to its admissibility. A long time judge of the Third Judicial District would have put it this way: "The testimony may be received for whatever it is worth."

*People v. Shirley*, 31 Cal.3d 18, 181 Cal. Rptr. 243, 641 P.2d 775, 785 (1982), cert. denied, 103 S.Ct. 13 (1982), was decided two months after *Chapman*. The California Supreme Court traced the history of hypnotically enhanced testimony and said:

"* * * In the earlier cases, as in *Harding*, [*v. State*, 5 Md.App. 230, 246 A.2d 302], the courts engaged in little or no analysis of the issue, and merely reiterated the general proposition that the fact of hypnosis 'goes to the weight, not the admissibility' of the evidence. If they discussed the point at all, the courts simply noted that the witness believed he was testifying from his own memory and that his credibility could presumably be tested by ordinary cross-examination. [Citations.]"

The court then determined:

"For all these reasons, we join instead a growing number of courts that have abandoned any pretense of devising workable 'safeguards' and have simply held that hypnotically induced testimony

is so widely viewed as unreliable that it is inadmissible under the *Frye* test. * * *" *People v. Shirley*, supra, at 787, 181 Cal. Rptr. 243, 641 P.2d 775.

I do not advocate that hypnotically enhanced testimony be inadmissible per se, but rather that the hypnotist have some qualifications and that some safeguards or verification procedures be followed. We require neither; in this area of evidence Wyoming stands alone.

In all probability the State could have obtained a conviction here without the use of a witness whose testimony had been enhanced by hypnotism. The majority opinion implies that even without the testimony of the hypnotized witness, there is still overwhelming evidence of guilt. This latter notion, however, is a fragile reason for upholding a conviction, and is particularly dangerous with respect to a hypnotized witness. There is a myth that when a person is hypnotized he tells the truth.[4] "It ain't necessarily so."[5]

"To a layperson, hypnosis is 'cloaked in a veil of mysticism' and seems to magically produce fantastic recall. Laymen commonly give great credibility to hypnosis and a jury is likely to place undue emphasis on what transpired during a hypnosis session." 1 Land & Water Review, p. 346 (1983).

We cannot know that the jury convicted appellant on evidence that was free of taint. Because of fascination with hypnotism and the false idea that a hypnotized person tells the truth, the jury may have convicted primarily on the testimony of the witness Davidson whose testimony had been

---

hypnotized her. Initially, the prosecutor was unable to give the qualifications of the hypnotist. The prosecutor was not sure when the hypnotic session took place; in fact, he missed the date by two or three months.

**3.** There is a man in Oakland, California, who is the dean and lone "professor" at "Croaker College." For the sum of $150 each, this man trains frogs to jump. (Many graduates, after receiving their degrees, go on to compete in the famous jumping contest of Calaveras County.) As part of his rigid training curriculum, the "professor" claims that he hypnotizes the

frogs; while they are in their hypnotic trance, he plays an attitude-improvement tape to them. Under our present standards the dean of "Croaker College," would be over-qualified as a hypnotist.

**4.** Dilloff, The Admissibility of Hypnotically Influenced Testimony, 4 Ohio N.U.L.Rev. 1, 2 (1977) (quoting 9 Encyclopedia Britannica *Hypnosis* 133 (1974)).

**5.** *State v. Hurd*, 86 N.J. 525, 432 A.2d 86, 92 (1981).

enhanced by hypnotism. This case can be reversed without overruling any part of *Chapman,* and it should be.

A majority of the jurisdictions have held that the prosecution has an affirmative duty to advise the defense if a witness has been hypnotized. *United States v. Miller,* 411 F.2d 825 (2nd Cir.1969); *Emmett v. Ricketts,* 397 F.Supp. 1025 (N.D.Ga.1975); *Lemieux v. Superior Court of Arizona, etc.,* 132 Ariz. 214, 644 P.2d 1300 (1982); *People v. Tait,* 99 Mich.App. 19, 297 N.W.2d 853 (1980); *State v. Hurd, supra.*[6]

In this case the majority opinion says that the hypnosis of the witness Davidson was made known to appellant before trial. Before trial the State made its files available to appellant. On one of the supplemental reports in the prosecutor's file was a notation that Ms. Davidson had been hypnotized. This is the pretrial notice of hypnotism that the State gave appellant and that was deemed to be sufficient by the majority. During the cross-examination at trial of the witness Davidson, appellant had actual notice for the first time that the witness had been hypnotized. I think that what the majority considered to be notice is insufficient.

I would hold that the fact that a witness has been hypnotized is exculpatory information or is otherwise discoverable under *Brady v. State of Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for the reason that the credibility of the witness becomes an issue. *Emmett v. Ricketts, supra.* Furthermore, the State should have an affirmative duty to specifically advise

defendant of the hypnotism before trial; making the State's files available to defendant is not sufficient to discharge that duty. *Emmett v. Ricketts, supra,* 397 F.Supp. at 1043.

Discovery during trial that a state's witness has been hypnotized is useless information. Advice that a witness has been hypnotized immediately before trial is not much better. When a defendant's counsel receives late information on hypnotism his ability to prepare for trial is impaired. He needs time to prepare cross-examination questions, consult and perhaps call expert witnesses of his own, review the law, check circumstances surrounding the hypnotic sessions, check the qualifications of the person who hypnotized the witness, and review the record of the hypnotic session. Such a process cannot be accomplished immediately before trial or during trial.

When the ability to prepare for trial is impaired, the right to effective counsel guaranteed by the Sixth Amendment of the United States Constitution is rendered meaningless. The difficulty of adequately cross-examining a previously hypnotized witness constitutes a serious infringement of the right of confrontation.

For these reasons I would reverse and remand for a new trial.

---

**6.** In the case here the majority have determined that the prosecution must henceforth specifically advise the defense that a witness was

hypnotized. I certainly agree with that. However, that does not help the defendant here.