Everett William PHILLIPS,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 87–283.

Supreme Court of Wyoming.

May 5, 1989.

Rehearing Denied June 13, 1989.

---

James R. McCarty, Casper, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Asst. Atty. Gen., and Hugh Kenny, Asst. Atty. Gen., for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

MACY, Justice.

This is the companion case to *Harvey v. State*, 774 P.2d 87 (Wyo.1989). Appellant Everett William Phillips appeals his convictions of kidnapping and first-degree sexual assault.[1] Appellant raises several issues upon appeal, but, as in *Harvey*, we find that the dispositive issue is whether, under the circumstances of this case, appellant was denied the right to a speedy trial.

We reverse.

Appellant was charged and convicted identically with his codefendant, Jetty Lee Harvey, in connection with the January 5, 1986, abduction and rape of a Rock Springs woman. A third defendant, David Swazo, who was the actual perpetrator of the sexual assault, was convicted upon a guilty plea, and he testified against appellant and Harvey at trial. The facts of the offenses, as presented at trial by the State and ac-

1. As in the *Harvey* case, appellant was charged alterantively on both crimes as either a principal or an aider and abettor. Also as in *Harvey*, there is a discrepancy between the verdict and the judgment and sentence as to whether appel-

lant was convicted as a principal or as an accessory. This discrepancy is raised as an issue by appellant, but our disposition of the speedy trial issue precludes the necessity of addressing this issue. *See Harvey*, 774 P.2d at 89, n. 1.

cepted by the jury, are summarized in *Harvey* and need not be repeated here. Of additional note, however, are the facts that appellant was the owner and driver of the vehicle in which the sexual assault occurred and that appellant was not arrested by the police upon their intervention in the offenses, as were Harvey and Swazo, because the victim did not initially implicate appellant in the crime.

Although appellant was tried jointly with his co-defendant, Harvey, on identical charges stemming from the same incident and although the total period of delay in each case is the same, the procedural sequence of events differs in each case in certain respects. Thus, in order to properly evaluate appellant's lack of speedy trial claim, it is necessary that we trace the progression of this case from the complaint and arrest through trial, although often these steps overlap with those outlined in *Harvey*. The offenses occurred on January 5, 1986. Appellant was arrested on January 9, 1986, pursuant to a complaint issued on that date and amended on January 10.[2] On January 16, 1986, through counsel, appellant filed a waiver of both his initial appearance and a speedy preliminary hearing, and a preliminary hearing was scheduled by the county court for February 27, 1986. On February 7, 1986, upon a motion for continuance filed by the State, the preliminary hearing was rescheduled for April 15, 1986. Appellant, on February 20, 1986, moved for a continuance, and the preliminary hearing was reset for May 1, 1986. On April 29, 1986, the State again obtained a continuance, and the preliminary hearing was rescheduled for July 1, 1986. On July 1, the preliminary hearing was held, and appellant was bound over to district court.

The information was filed in the district court on July 14, 1986, and an arraignment was also held on that date, in which appellant entered a plea of not guilty. On the date of the arraignment, appellant filed a motion to dismiss, a motion for a bill of particulars, and a motion for discovery. The district court did not rule on these motions at that time.

The ensuing five months are notable simply by the fact that no activity of record occurred for those five months. The next event of record is a letter from the district court, filed December 5, 1986, informing counsel that the court had consolidated the cases of appellant and his co-defendants, Harvey and Swazo, and that trial was set for January 6, 1987. On December 9, 1986, the State obtained a continuance. This fact, as in the *Harvey* case, is not shown in the record, but the State has acknowledged in its appellate brief that it obtained the continuance.[3] As in *Harvey*, we will accept as a conceded point the State's acknowledgement that it obtained this continuance, thus accounting for the otherwise inexplicable fact that trial was not held on January 6, 1987, as scheduled.

On December 10, 1986, appellant filed a motion for severance of his trial from that of his co-defendants. On December 15, 1986, the district court issued an order establishing a briefing schedule on this motion and on appellant's pending motions submitted at the previous July arraignment. Pursuant to this order, appellant had twenty days in which to file his brief, and the State was given fifteen days thereafter to file its reply brief. Appellant filed his motions' brief on December 29, 1986, and the State's brief was due on January 19, 1987. On February 3, 1987, pursuant to a motion by the State, the district court granted the State an extension until March

**2.** Appellant, in his brief, lists the date of arrest as being January 14, 1986. Testimony in the record, however, places the date of arrest at January 9, 1986.

**3.** Although not a matter of record, appellant attached to his brief a copy of a letter from the prosecuting attorney to defense counsel dated December 9, 1986, which clarifies what occurred. In this letter, the prosecuting attorney informed defense counsel that: "I have this date spoken with Judge Hamm and have continued the above named matters from January 6, 1987 for jury trial." The letter explains that the new county attorney would take office on January 5, 1987, and that the January 6 trial setting "would place too heavy a burden on both Defense and State's attorneys." Appellant's characterization of this continuance as *ex parte* would appear to be accurate.

2, 1987, in which to file its brief. From the fact that this motion and order are on the same document, obviously prepared by the prosecuting attorney, and because this document does not indicate that appellant was served with a copy of the motion, it would appear that appellant aptly characterizes this motion and order as having been obtained *ex parte*. The State's reply brief was eventually filed on April 15, 1987. On April 21, 1987, appellant filed an objection to the State's brief, requesting that it be stricken as untimely and requesting that appellant's motions be granted. Apparently, the district court issued a letter ruling on appellant's motions on April 30, 1987, as this fact is referred to by both parties in their briefs, though the letter ruling is not in the record. The district court's disposition of these motions is not shown, although the State subsequently provided a bill of particulars and the motion to sever was denied in pretrial conference.

The district court also apparently sent notice to counsel on June 2, 1987, of the July 21, 1987, trial setting, though again this notice is not in the record but is referred to by both parties in their briefs. On July 6, 1987, appellant filed a motion to dismiss on speedy trial grounds, and briefs on that issue were filed by both parties. The trial began on July 21, 1987, and, in a pretrial chambers conference, the district court denied appellant's speedy trial motion. After a three-day trial, the jury returned a verdict of guilty on both charges. Appellant was sentenced on October 22, 1987, to two concurrent terms of not less than twenty years nor more than thirty years.

The right to a speedy trial is guaranteed by both the Sixth Amendment to the United States Constitution and article 1, section 10 of the Wyoming Constitution.[4] In assessing appellant's denial of a speedy trial claim, we are guided in this case, as we were in *Harvey*, by Rule 204 of the Uniform Rules for the District Courts of the State of Wyoming in conjunction with the four-part balancing test enunciated by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and followed by this Court in a long series of cases beginning with *Cosco v. State*, 503 P.2d 1403 (Wyo. 1972), *cert. denied* 411 U.S. 971, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973).

Rule 204(b) directs that "[a] criminal charge shall be brought to trial within 120 days following the filing of information or indictment." The rule provides that certain periods are to be excluded from the computation of the 120-day period, including delays caused by proceedings related to the defendant's mental illness or deficiency, proceedings on another charge, the defendant's change of counsel or application therefor, continuances granted to the defendant, and continuances granted to the prosecution—if the defendant expressly consents, if the State's evidence is unavailable despite the exercise of due diligence, or if they are required in the due administration of justice and the defendant will not be substantially prejudiced. Rule 204(c) and (d). *See also Harvey*, 774 P.2d at 94. This Court has held that Rule 204 is not an exclusive or mandatory test but rather that it is advisory and that it constitutes another factor to be considered in conjunction with the balancing test from *Barker*, 407 U.S. 514, 92 S.Ct. 2182. *Harvey*, 774 P.2d at 93–94; *Caton v. State*, 709 P.2d 1260 (Wyo.1985). Thus, we will consider the provisions of Rule 204, as they relate to this case, within the context of the balancing test analysis. Under the *Barker* balancing test, we examine speedy trial challenges in light of the following four factors: (1) length of the delay; (2) reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2191; *Estrada v. State*, 611 P.2d 850, 852 (Wyo.1980). In considering whether a speedy trial violation has occurred, all the factors are to be considered and balanced in relation to all relevant circumstances. *Moore v. Arizona*, 414 U.S.

---

**4.** The law with respect to the right to a speedy trial is explored in depth in the companion case of *Harvey*. Thus, the analysis and citation to authority will be somewhat abbreviated in the instant case, and reference to *Harvey* is suggested.

25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973); *Heinrich v. State*, 638 P.2d 641 (Wyo.1981).

## LENGTH OF DELAY

■ We begin our examination of the length of the delay in light of the 120–day time limitation established by Rule 204(b). Pursuant to Rule 204(b), the relevant time period for a speedy trial analysis runs from the date of the information to the date of trial. Here, the information was filed on July 14, 1986, and trial commenced on July 21, 1987, 372 days later. Although Rule 204(c) provides that various periods are to be excluded from the computation of the time period, none of the allowable exclusions are found in the record in this case. Appellant did not seek any continuances during this time period, and the December 9, 1986, continuance sought and obtained by the State appears to have been accomplished without appellant's prior knowledge or consent. This continuance, consequently, does not qualify for exclusion, and, under the Rule 204(c) analysis, the length of delay remains at 372 days.[5] From the standpoint of Rule 204, we see that the delay in this case exceeded the prescribed 120–day time period by more than three times. While Rule 204 is advisory rather than mandatory, as we noted in *Harvey*, the delay in this case is more than sufficient to trigger further analysis of the other factors. *Harvey*, 774 P.2d at 94; *Caton*, 709 P.2d at 1265.

■ The length of the delay in the instant case is considerably longer when evaluated under a constitutional analysis wherein the speedy trial clock starts to run upon either arrest or the filing of the complaint. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Caton*, 709 P.2d 1260. *See also Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975) (Sixth Amendment activated when a criminal prosecution has begun and extends to those who have been accused). Here, the original complaint was filed on January 9, 1986, and appellant was apparently arrested on that date or shortly thereafter. *See supra* note 1. The elapsed time between the filing of the complaint and appellant's trial was, accordingly, 558 days, or more than one and one-half years. Although we have stated that no specific length of delay automatically creates a constitutional speedy trial violation, *Caton*, 709 P.2d at 1264, we have also said:

> [W]hen the delay is so protracted as to be presumptively prejudicial, it is a triggering mechanism, which requires "inquiry into the other factors that go into the balance."

*Phillips v. State*, 597 P.2d 456, 460 (Wyo. 1979) (quoting *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192). In the instant case, the delay of 558 days from the filing of the complaint to the trial is so protracted as to be presumptively prejudicial. Inquiry into the other factors, therefore, is required, and the excessive delay must be weighed heavily against the State in the final analysis.

## REASON FOR DELAY

■ We have already determined that none of the period between the filing of the information and the trial is excludable delay under Rule 204(c). We now look at the entire period from the filing of the complaint to trial to determine if any of this period reflects delays attributable to appellant or excusable for any other reason. Delays attributable to a defendant may disentitle him to speedy trial safeguards. *Harvey*, 774 P.2d at 94; *Cherniwchan v. State*, 594 P.2d 464, 468 (Wyo.1979). The State argues that appellant agreed to the first "seven" months of delay from the time of the original complaint until the filing of the information—a period of actually only six months. This contention overstates the facts, although appellant was responsible for some of the delay in this initial period. Appellant initially waived his right to a speedy preliminary hearing, and both appellant and the State sought

---

**5.** Other aspects of the reason for delay will be discussed under that general heading in the body of this opinion.

continuances causing delay, reasonably attributable to both, up through the continuance obtained by appellant on February 20, resetting the preliminary hearing for May 1, 1986. On April 29, the State again obtained a continuance, resulting in the resetting of the preliminary hearing from May 1 to July 1, 1986. There is nothing in the record indicating that appellant agreed to, or had an opportunity to object to, this continuance. This final two months of delay in getting to the preliminary hearing is attributable solely to the State.

For five months after the July 14, 1986, information and arraignment absolutely nothing of record occurred in the case. The State does not attempt to justify or even to explain this period. After the district court notified the parties on December 5, 1986, that trial was set for January 6, 1987, the State immediately sought and obtained a continuance. Since there is no record of this continuance, since we must rely upon the State's concession that it obtained the continuance, and since it does not appear that appellant had prior knowledge or opportunity to object to the continuance, we can only attribute the delay occasioned by this continuance to the State.

Given that the State had just obtained a continuance of the January 6, 1987, trial date, we are reluctant to ascribe any delay to appellant resulting from the briefing upon appellant's motions ordered by the district court on December 15, 1986. It is not at all clear that the district court would have delayed trial for this purpose absent the continuance obtained by the State. In any event, pursuant to the briefing schedule, appellant promptly filed his brief, several days ahead of the deadline imposed by the court. The State's brief was due on January 19, 1987. This one-month period for briefing can arguably be attributed to appellant. The ensuing three-month period required by the State to file its brief, however, resulting from missed deadlines and extensions granted, is solely attributable to the State and its lackadaisical approach to prosecuting this case, as is the balance of the time required to bring the case to trial, all of which was a direct result of the December continuance obtained by the State.

■ The State additionally argues that much of the delay can be justified as necessary due to the State's attempt to obtain the testimony of Swazo against appellant and as a result of a crowded docket. The State made the same arguments in the *Harvey* case, and we reject them here for the same reasons as we did in that case—lack of record support. As in *Harvey*, we note that the State did not seek a continuance on either of these grounds. The record does indicate that Swazo was convicted upon a guilty plea prior to appellant's trial and that he testified for the State against appellant at trial. While the Supreme Court in *Barker*, 407 U.S. at 534, 92 S.Ct. at 2194, observed that perhaps some delay is permissible for the prosecution to obtain the testimony of a co-defendant, on this record we cannot determine how much delay, if any, was occasioned by plea negotiations with Swazo. The only indication in the record of a docket problem is contained in the State's February 3, 1987, motion requesting an extension of time for filing its already overdue brief. In seeking the extension, the State cited its need to prepare for an upcoming trial. According to the dates the State listed for this assertedly conflicting trial, however, it appears that the State did not file its brief on appellant's motions until two months after that trial. On this record, we cannot attribute any delay to an overcrowded docket.

■ Of the eighteen months taken to bring appellant to trial following the initial complaint, appellant was jointly responsible for three, or perhaps four, months of the delay, with a balance of at least fourteen months for which the State has offered no plausible explanation or justification. We are in agreement with appellant's contention that, once the case reached the district court, virtually none of the delay can be properly attributed to appellant, in that appellant filed all motions and briefs in a timely manner, even ahead of deadlines, and did nothing to prolong the prosecution of the case. The State has the burden to

prove that delays in bringing a defendant to trial are reasonable and necessary. *Estrada*, 611 P.2d 850; *Stuebgen v. State*, 548 P.2d 870 (Wyo.1976). In this case, as in *Harvey*, the State has failed to meet its burden. Our remarks in *Harvey* regarding the reason for delay are equally appropriate in the instant case:

> While it is recognized that neutral or innocent unnecessary delay should be weighed less heavily against the State than deliberate unnecessary delay, *Caton*, 709 P.2d at 1265; *Estrada*, 611 P.2d 850; *Barker*, 407 U.S. 514 [92 S.Ct. 2182], it is also recognized that such delay must nevertheless be considered, because the government, rather than the defendant, bears the ultimate responsibility for such circumstances. *Estrada*, 611 P.2d at 854; *Barker*, 407 U.S. at 531 [92 S.Ct. at 2192]. Here, we are unable to determine whether the delay was in fact neutral as opposed to deliberate, although nothing in the record indicates any sinister motive on behalf of the State. What we do find in this case, however, is simply no reason or justification for the delay, and we cannot say that the State made a good faith effort to bring appellant to trial as quickly as possible. *See Heinrich*, 638 P.2d at 644.

*Harvey*, 774 P.2d at 95. As in *Harvey*, we conclude that considerations of the reason for delay weigh substantially in appellant's favor in the balancing test.

## DEFENDANT'S ASSERTION OF HIS RIGHTS

■ It is not essential that a defendant assert his speedy trial right as a prerequisite to an ultimate conclusion that a speedy trial violation has occurred, but it is a relevant factor to consider. *Estrada*, 611 P.2d at 854; *Hurst v. State*, 563 P.2d 232 (Wyo. 1977). The State urges, with respect to this factor, that appellant made no objection to the December 9, 1986, continuance obtained by the State. As mentioned previously, it appears that the continuance was granted without appellant's prior knowledge and opportunity to object. Nevertheless, appellant did not file his motion to dismiss on speedy trial grounds until July

6, 1987, two weeks before trial. A defendant, however, has no duty to bring himself to trial. *Barker*, 407 U.S. at 527, 92 S.Ct. at 2190; *Dickey v. Florida*, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). Thus, while this factor cannot be said to weigh in appellant's favor, neither can it be seen to weigh against him, as he had no notice and opportunity to object to the trial continuance obtained by the State or to the extension granted the State in motions briefing, and appellant ultimately did assert his right prior to trial.

## PREJUDICE TO DEFENDANT

■ Prejudice to the defendant is the final factor for consideration in the balancing test. It is not necessary that prejudice be affirmatively shown in order to prove a violation of the constitutional right to a speedy trial, *Moore*, 414 U.S. at 26, 94 S.Ct. at 189, and *Heinrich*, 638 P.2d at 644, but it is an important factor to consider. *Caton*, 709 P.2d at 1266; *Grable v. State*, 649 P.2d 663, 671 (Wyo.1982). Prejudice to the defendant may consist of: (1) lengthy pretrial incarceration; (2) pretrial anxiety; and (3) impairment of defense. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2192. *See also Heinrich*, 638 P.2d 641; and *Estrada*, 611 P.2d 850.

In *Harvey*, 774 P.2d at 96, we held that the delay of approximately eighteen months in that case was sufficiently lengthy to be presumptively prejudicial with respect to pretrial anxiety and related concerns (including the defendant's social relations, freedom of movement, and anxiety over public accusation), citing *Dickey*, 398 U.S. at 39, 90 S.Ct. at 1569 (Brennan, J., concurring); *Caton*, 709 P.2d 1260; and *Cherniwchan*, 594 P.2d 464. The same can be said regarding the equivalent delay in this case. The other two aspects of prejudice, as in *Harvey*, do not appear to be present in this case. Appellant was incarcerated only briefly after arrest. In his pretrial brief supporting his motion to dismiss for lack of speedy trial, appellant asserted that he was having difficulty locating two witnesses, but this is not borne out elsewhere in the record, nor was any such

difficulty shown to be a function of the delay. We conclude, therefore, as we did in *Harvey*, that appellant was presumptively prejudiced by the lengthy delay but that the prejudice was only minimal, and this factor weighs only slightly in appellant's favor in the overall balancing test.

## BALANCING THE FACTORS

█ This case is very similar to the companion case of *Harvey* in which we concluded that a speedy trial violation had occurred. Here, the first two factors—length of delay and reason for delay—weigh decisively in appellant's favor. Although appellant did not actively assert his speedy trial right until shortly before trial, he did raise the issue, and this factor does not weigh against appellant to any significant extent. The prejudice factor leans slightly in appellant's favor as a result of the presumption of prejudice associated with excessive delay such as occurred in this case. Balancing the four factors together, we conclude that, as we did in *Harvey*, a violation of appellant's speedy trial right has occurred. The length of the delay and the lack of any reasonable justification for it are sufficiently decisive in this case, even though the prejudice to appellant was relatively minor and he did not timely assert his right.

The instant case may be somewhat closer than *Harvey* by virtue of the fact that appellant was responsible for some of the delay in getting to the preliminary hearing and because appellant was not as diligent as Harvey in asserting his right. The differences in the two cases, however, are mostly illusory. In each case, there occurred a delay from the time of complaint and arrest until trial of one and one-half years attributable primarily to the State and the trial court. In each case, the State has failed to meet its burden of proving that the excessive delay was necessary or reasonable. *Estrada*, 611 P.2d 850. In each case, the delay exceeded the 120–day guideline of Rule 204(b) several times over. In neither case are we able to say that the State made a good faith effort to bring the

defendant to trial as soon as possible. *See Heinrich*, 638 P.2d 641.

In *Harvey*, we discussed the fact that the only remedy for a violation of the constitutional right to a speedy trial is dismissal of the information. *Harvey*, 774 P.2d at 97. This is obviously an extreme remedy, particularly where, as here, appellant was found guilty by a jury of a serious crime. It is, however, the only possible remedy. *Barker*, 407 U.S. at 522, 92 S.Ct. at 2187. If we intend to honor and preserve the right, as constitutionally guaranteed for the protection of all society from the danger of lingering governmental accusation without the benefit of trial, we must enforce the right in difficult cases such as this. *See Harvey*, 774 P.2d at 97 (extended examination of the necessity for and rationale underlying the remedy of dismissal).

For the reasons stated in this opinion, and with reference to the reasoning incorporated in the companion case of *Harvey*, 774 P.2d 87, we reverse appellant's convictions and remand to the district court with instructions to dismiss the information.

URBIGKIT, J., filed a specially concurring opinion.

THOMAS, J., filed a dissenting opinion in which GOLDEN, J., joined.

GOLDEN, J., filed a dissenting opinion in which THOMAS, J., joined.

URBIGKIT, Justice, specially concurring.

My conception that constitutional rights are obligatory and not merely authored in wan hopefulness is adequately addressed in my special concurrence in *Harvey v. State*, 774 P.2d 87 (Wyo.1989).

But it must be reiterated in response to the dissents in their efforts to affirm this conviction that at least I will expect that the uniform rules for the district courts that are stated to be mandatory are mandatory and not only for litigants and attorneys, but also for the judicial system, including judges. This unbending determination will continue for me until either the

Wyoming Judicial Conference rescinds or this court revokes the delegation made in W.R.Cr.P. 52, as initially adopted November 21, 1968. "Shall" will continue to mean "shall" and not be redefined to anticipate "perhaps." In *Mayland v. State*, 568 P.2d 897, 899 (Wyo.1977), this court, in considering in one of its rules what the word "shall" means, stated:

> The court is then faced with the simple question of whether the requirements of this rule are mandatory.
>
> It is hard to conceive a more direct commandment than rests in this rule. This is clear and obvious. This court in a much earlier day observed that when the word "shall" was employed, it was usually legally accepted as mandatory, *Mau v. Stoner*, 14 Wyo. 183, 83 P. 218, 219. * * * Orderly judicial administration is dependent upon procedural rules, and in order to assure uniform and timely disposition of appeals they must be enforced and not relaxed or changed at the whim of any court. * * * Reasonable adherence to the rules of the court is necessary to the proper administration of justice, * * *.

I recognize not only in the enforcement of the appellate process but also in the application of the constitutional right to a speedy trial, that the word "shall" means just what it says. The moralistic and philosophical conceptualization that pervades the subject of why courts should obey the law does not apply here. Smith, *Why Should Courts Obey the Law?*, 77 Geo.L.J. 113 (1988). The dissents would have this court ignore the rule established by the judiciary as our rule and not the intangible product of another body of government. Both are wrong, but this is even more so.

In any event, I do not justify that any segment of the judiciary by rule or result has the opportunity or authority to rescind, revoke or extinguish our 600-year history of English law, the Wyoming Constitution or the Sixth Amendment of the United States Constitution.[1]

THOMAS, Justice, dissenting, with whom GOLDEN, J., joins.

As I did in the *Harvey* case, I vehemently dissent from the disposition of this case according to the majority opinion. I am pleased to join in the dissenting opinion of Justice Golden who has correctly captured the law with respect to the right of a speedy trial. Beyond that, I simply adopt, as pertinent to Phillips, my dissenting opinion in the *Harvey* case. I note only that instead of 531 days, the period of time applicable to Phillips is 372 days, a few days more than one year.

GOLDEN, Justice, dissenting, with whom THOMAS, J., joins.

The evidence at trial, upon which the jury convicted appellant Everett W. Phillips, was graphic and repugnant. Yet, the majority does not say much about the details of the sexual assault and indecent acts which Phillips and his cohorts Swazo and Harvey forced upon the defenseless victim.

On January 5, 1986, Phillips and his companions, Harvey and Swazo, forcibly abducted a 38-year old woman from a sidewalk in Rock Springs, Wyoming. Once the trio physically restrained her in the rear seat of Phillips' crew cab truck, Swazo roughly removed most of the victim's clothing while Harvey held her arm. Phillips held her leg and drove the truck around Rock Springs while the gang assault continued. Helpless against her tormentors, the victim was sexually molested for nearly twenty minutes by Swazo as he was both spurred on and taunted by Phillips and Harvey, who were waiting their turn. Swazo sucked the victim's breasts, performed cunnilingus on her, and inserted his fingers into her vagina. He tried to insert his penis into her vagina. All the while,

---

1. Additional significant appellate issues were presented in appellate brief but one not documented or presented, although reaching a fundamental concern, is the trial court's pre-trial concluded attitude of guilt as announced in a letter to counsel dated December 26, 1986 or about seven months prior to trial. See *Harvey*, 774 P.2d at 107, n. 8 and at 108 n. 9 (Urbigkit, J., specially concurring) and *Smallwood v. State*, 771 P.2d 798 (Wyo.1989) (Urbigkit, J., dissenting).

the victim pleaded with him not to rape her. Phillips and Harvey cheered and shouted profanities while Swazo molested and abused her. Phillips said, "If you can't get it up let me." The victim testified she was afraid for her life.

Finally, Phillips stopped his truck and, with trousers down, tried to push Swazo aside so he (Phillips) could have his way with the victim. When Swazo resisted, Phillips became angry. He let it be known in no uncertain terms that he was going to drop Swazo and Harvey off, take the victim into the mountains, do what he wanted with her, and then kill her. Luckily for the victim, an alert citizen of Rock Springs had witnessed her abduction and had quickly notified law enforcement authorities. The Rock Springs police responded, located Phillips' truck, and rescued the victim. Following the arrests of the three, Swazo pled guilty and was convicted, and testified against Phillips and Harvey.

Although the majority has not seen fit to relate these facts, it has seen fit to reverse the jury's conviction of Phillips and set him free.

At the heart of this decision is the majority's large concern for Phillips' *presumed* pretrial anxiety during the period he was awaiting trial. By choosing this course the majority decision signals a startling departure from this court's past controlling decisions and the seminal case of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (expressly adopted by this court in *Cosco v. State*, 503 P.2d 1403, 1405 (Wyo.1972)), from which those past decisions derive. Consequently, I most strongly dissent.[1]

Of the four *Barker* factors bearing upon any speedy trial challenge, the last one, prejudice to the accused, is particularly rel-

evant here for two reasons. First, as the majority concedes, this record reveals no evidence of prosecutorial misconduct and contains a meager indication that Phillips, *unoppressed* by pretrial incarceration, made a *pro forma* assertion of his speedy trial right a mere fifteen days before his trial began. Ante at 121. Second, and more important, as the majority further concedes, this record is devoid of any *actual* prejudice to Phillips' ability to formulate a defense or to his liberty while he waited and prepared for trial. Ante at 8. Unlike the majority, as I focus on the factor of prejudice to the accused, I am aware that Justice Powell instructed us in *Barker* that inherent in this factor are three interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118. Such prejudice did not happen to the accused here.

With these interests in mind as I draw upon *Barker* and aligned past Wyoming decisions, I cannot conclude, as the majority does, that uncritically combining the four balancing test factors set out in *Barker*, and adding presumptions not supported by the record, will produce a finely tuned formula that can be mechanically applied to yield a "correct" answer to each and every speedy trial case. The United States Supreme Court set out those factors in *Barker* as analytical tools, useful in any given case only to the extent that they point to a just result under the Constitution. See *Barker*, 407 U.S. at 533–34, 92 S.Ct. at 2193–94, 33 L.Ed.2d at 118–19.

In *Barker*, the Court considered the record and concluded that, under the four factors set out above, the case was a close one for affirmance. In my judgment Phil-

---

**1.** The fervency of my disagreement with the majority opinion in this case is similar to that experienced by Justice Brown in *Gee v. State*, 662 P.2d 103, 105 (Wyo.1983), where he prefaced a dissent by stating:

I undertake the disconsolate task of differing with the majority, with a feeling that I am probably right.

A dissent has a limited purpose. It is a voice in the wilderness urging repentance,

begging or chiding the majority to correct a mistake into which it has been seduced. It may help rescue for another day a principle that is not supported today. It is also an appeal to greater enlightenment tomorrow, a plea to later courts to set things right. A dissenter fancies that he has a sense of history and does not want to associate himself with an opinion that he believes is wrong and has only a short day in the sun.

lips does not begin to present us with a record capable of raising his case to that level. A brief comparison of the facts in this case with the facts in *Barker,* where seven members of the United States Supreme Court voted to affirm a conviction for first degree murder and two others specially concurred in that result, brilliantly reveals how the majority of this court has become so focused on presuming reversible prejudice that it has lost sight of the overall balance dictated by this record.

By simply following Justice Powell's lead in *Barker,* this court would have been able to objectively apply the balancing test in the faithful image and likeness of the crucial portion of the *Barker* opinion:

> It is clear that the length of delay between arrest and trial—well over five years [eighteen months for Phillips]—was extraordinary. * * *
>
> Two counterbalancing factors, however, outweigh these deficiencies. The first is that prejudice was minimal. Of course, Barker [Phillips] was prejudiced to some extent by living for over four years [eighteen months] under a cloud of suspicion and anxiety. Moreover, although he was released on bond for most of the period, he did spend 10 months in jail before trial [*Phillips was freed on bond the day of his arrest*]. But there is no claim that any of Barker's [Phillips'] witnesses died or otherwise became unavailable owing to the delay. The trial transcript indicates only two very minor lapses of memory—one on the part of a prosecution witness—which were in no way significant to the outcome [Phillips' record does not support this type of claim].
>
> More important than the absence of serious prejudice, is the fact that Barker [Phillips] did not want a speedy trial. Counsel was appointed for Barker [Phillips had counsel (9 days after the crime—5 days after his arrest) immediately after his indictment and represented him throughout the period]. No question is raised as to the competency of such counsel. Despite the fact that counsel had notice of the motions for continuances, the record shows no action whatever tak-

en between October 21, 1958, and February 12, 1962, [Phillips never asserted the speedy trial right between arrest date, January 10, 1986, and July 2, 1987, (a mere nineteen days before trial, Phillips' counsel made what can only be characterized as a pro forma motion to dismiss)] * * *. Instead, the record strongly suggests that while he hoped tó take advantage of the delay in which he had acquiesced, and thereby obtain dismissal of the charges, he definitely did not want to be tried.

> \* \* \* \* \* \*
>
> [W]e would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial. We hold, therefore, that Barker [Phillips] was not deprived of his due process right to a speedy trial.

*Barker,* 407 U.S. at 534–36, 92 S.Ct. at 2194–95, 33 L.Ed.2d at 119–20. See also a similar application of *Barker,* by this court, speaking through Justice Cardine, in *Caton v. State,* 709 P.2d 1260, 1267 (Wyo.1985).

With this simple, but telling comparison between *Barker* and this case, I can only look on with incredulous disbelief as the majority frees Phillips. Spotlighted by the brilliant guiding light of *Barker,* where this nation's highest court could not find a speedy trial right violation against an accused whose trial was delayed *five years,* and who spent *ten months* in pretrial incarceration, the majority blithely presumes a violation on a record which convincingly demonstrates that a counseled Phillips, who was released on a $10,000 bond the same day he was arrested, did not want to be tried.

I find it unacceptable that the majority's sole legal justification for freeing Phillips is that the length of the delay here is sufficient, in and of itself, to allow this court to presume "anxiety" prejudice to Phillips' constitutional rights which in turn somehow justifies freeing him, particularly after Phillips admits that his trial was otherwise fair. The notion that charges might

be dismissed on that basis alone was originally raised without endorsement by Justice Brennan in his concurring opinion in *Dickey v. Florida*, 398 U.S. 30, 53–55, 90 S.Ct. 1564, 1576–78, 26 L.Ed.2d 26, 40–42 (1970) (in which Marshall, J., joined) unexplainably cited as controlling precedent, ante at 15. In that special concurrence, Justice Brennan discussed, among other things, the *idea* that cases may arise in which the length of the delay experienced by the defendant might justify a judicial presumption of prejudice[2] of constitutional magnitude. *Dickey*, 398 U.S. at 54–55, 90 S.Ct. at 1577–78, 26 L.Ed.2d at 41–42. This discussion was not offered as being particularly meritorious and certainly not as binding precedent for future speedy trial cases; instead, it was offered as an academic comment that the Court should begin to consider the basic questions presented by various speedy trial scenarios. After offering this discussion in *Dickey*, Justice Brennan expressly stated:

*These comments provide no definitive answers. I make them only to indicate that many—if not most—of the basic questions about the scope and context of the speedy-trial guarantee remain to be resolved.* Arguments of some force can be made that * * * prejudice ceases to be an issue in speedy-trial cases once the delay has been sufficiently long to raise a probability of substantial prejudice. Insofar as these arguments are meritorious, they suggest that the speedy-trial guarantee should receive a more hospitable interpretation than it has yet been accorded.

*Dickey*, 398 U.S. at 56–57, 90 S.Ct. at 1578, 26 L.Ed.2d at 42–43 (emphasis added).

Of particular concern to Justice Brennan, in presuming potential substantial prejudice sufficient to support dismissing criminal charges with finality when none had actually been shown, was that his notion suffered from an obvious practical flaw. He states:

The difficulty in [presuming prejudice after a substantially long delay] of course, lies in determining how long a prosecution must be delayed before prejudice is assumed. It is likely that generalized standards would have to be developed to indicate when during the course of the delay there arises a probability of substantial prejudice. Until delay exceeds that point, the burden most probably would remain on the accused to show that he was actually harmed. Once, however, delay exceeds that point prejudice would cease to be an issue, unless the government wished to argue harmless error. Though one temporal standard could very likely govern most prosecutions, account would need to be taken of those types of cases that diverge from the norm.

Id., 398 U.S. at 55, 90 S.Ct. at 1577–78, 26 L.Ed.2d at 42. This difficulty is best illustrated by Justice Brennan's own reluctance to presume "anxiety" prejudice as the sole basis for dismissal of criminal charges with prejudice in cases like the one before us now. In *Dickey*, (Dickey was convicted of armed robbery but his trial was delayed for seven years because of his incarceration on unrelated federal bank robbery charges), Justice Brennan raised the idea of presumed "anxiety" prejudice without endorsing its application. Despite his discussion, however, he did not feel that such a presumption should be endorsed and applied as he asserted the idea in a concurrence and voted to affirm the conviction.

More telling is Justice Brennan's vote in *Barker*, where he joined Justice White's concurrence emphasizing a similar broad theme of the defendant's liberty interest but, when push came to shove, concurred in

---

**2.** In his special concurrence to *Dickey*, Justice Brennan identifies the interests to be protected by the speedy-trial clause from such prejudice. An accused's interests include prevention of undue and oppressive pretrial incarceration and minimization of anxiety and concern accompanying public accusation because these disabilities can impair the accused's ability to mount a defense. *Dickey*, 398 U.S. at 41–42, 90 S.Ct. at

1570, 26 L.Ed.2d at 34 (Brennan, J., concurring, in which Marshall, J., joined). Society's interests include effective prosecution of criminal cases, prevention of commission of other criminal acts during the pretrial period, maintaining the deterrent value of a conviction and prevention of deliberate governmental delay to gain an unfair advantage over the accused. Id., 398 U.S. at 42, 90 S.Ct. at 1571, 26 L.Ed.2d at 34–35.

affirming Barker's conviction. Justice Brennan's actions speak louder than his words and lend support to my conclusion that turning a convicted violent criminal (here a gang sexual molester) loose on the public, to make a point to our district courts, is an extreme and drastic step.[3] Although the United States Supreme Court might conceivably threaten such drastic action based on presumed "anxiety" prejudice in a case with a longer delay than those in *Dickey* or *Barker,* it has only invoked the dismissal remedy in fact situations where the record shows actual prejudice to the defendant's ability to formulate a defense or where the defendant has made an actual showing of anxiety prejudice adversely affecting his liberty. See, e.g., *Klopfer v. State of North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).[4] This is not that case.

Until now, this court has never gone any further than to reference in obiter dicta Justice Brennan's unendorsed *idea* about presumed "anxiety" prejudice.[5] Most recently, Justice Cardine mentioned Justice Brennan's idea in *Caton v. State,* 709 P.2d at 1266; a different portion of Justice Brennan's ideas on this subject was earlier quoted in passing by Justice Rose in *Cherniwchan v. State,* 594 P.2d 464, 469 (Wyo. 1979). Significantly, both Justices Cardine and Rose, like Justice Brennan, were not willing to apply the presumed "anxiety" theory as a basis for reversing those cases. *Caton,* 709 P.2d at 1266; and *Cherniwchan,* 594 P.2d at 469. Cf. *Heinrich v. State,* 638 P.2d 641, 644–45 (Wyo.1981). In light of this, I am alarmed that this court would latch on to such vague and undefined dicta, academically discussing a concept that was not even invoked by its creator when he was confronted in *Barker* with a case argu-

**3.** Indeed, in *Dickey,* Justice Brennan observed:
Finally, what is the role of prejudice in speedy-trial determinations? *The discharge of a defendant for denial of a speedy trial is a drastic step, justifiable only when further proceedings against him would harm the interests protected by the Speedy Trial Clause.* Thus it is unlikely that a prosecution must be ended simply because the government has delayed unnecessarily, without the agreement of the accused.
Id., 398 U.S. at 52, 90 S.Ct. at 1576, 26 L.Ed.2d at 40 (emphasis added).

**4.** I disagree with the majority's characterization of the holding in *Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) in this regard. In *Moore,* the Court was reviewing an Arizona Supreme Court interpretation of *Barker* and its predecessors, where the Arizona Supreme Court held that prejudice to the defense at trial was necessary to establish a federal speedy trial claim. The Court reversed and *remanded* that decision to the state court for further consideration, holding that the *Barker* test was more flexible than that and that each case should turn upon an overall substantive balance of its own facts. It is critical to note, however, that the Court did not dismiss the charges against the accused in *Moore.* See also *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969) (accused's presence in prison on other charges may prejudice his ability to formulate a defense—case remanded to Texas state court for further consideration—charges *not* dismissed).

**5.** Since adopting the balancing test set forth in *Barker,* this court has only once dismissed with

prejudice the charges against an accused on a speedy-trial challenge. In *Stuebgen v. State,* 548 P.2d 870 (Wyo.1976), District Judge Armstrong, sitting on this court by special designation, authored an opinion freeing two defendants who had been convicted of jointly possessing marihuana with the intent to deliver. Id. at 871. The basis for the dismissal appears to have been a vague presumption that an eighteen month pretrial delay was mostly attributable to the trial court and the prosecution. Id. at 874–75. It is also important to note that in the record in *Stuebgen,* unlike the record in this case, Stuebgen and his compatriot Roelfson both showed that their employment and schooling, i.e., their liberty interests, were *actually* prejudiced by the delay. No presumption of "anxiety" prejudice, as employed by the majority in this case, would have been necessary to tip the *Barker* balance towards the defendants. Id. at 874–75. Because of these facts, I view the decision in *Stuebgen* as factually inapplicable here, and would defer to the policy against dismissal of charges with prejudice illustrated by the multitude of subsequent decisions of this court affirming convictions in the absence of a showing of prosecutorial misconduct or actual prejudice to the defendant's liberty interests or ability to formulate a defense. Compare generally the affirmances in *Sodergren v. State,* 715 P.2d 170 (Wyo.1986); *Binger v. State,* 712 P.2d 349 (Wyo. 1986); *Caton v. State,* 709 P.2d 1260 (Wyo.1985); *Tageant v. State,* 683 P.2d 667 (Wyo.1984); *Grable v. State,* 649 P.2d 663 (Wyo.1982); *Heinrich v. State,* 638 P.2d 641 (Wyo.1981); *Robinson v. State,* 627 P.2d 168 (Wyo.1981); *Estrada v. State,* 611 P.2d 850 (Wyo.1980) from this decade alone.

ably more egregious than this one, and use that concept as the sole basis for dismissing the charges against Phillips under the circumstances of this case.

Before Justice Brennan would have this happen he wanted to have generalized standards developed to indicate when during the course of pretrial delay a possibility of substantial prejudice arises. *Dickey*, 398 U.S. at 55, 90 S.Ct. at 1577, 26 L.Ed.2d at 42. He also would want to have laid a solid analytical foundation to serve as a base for determining the weight to be given the various grounds for delay and how great a delay is justifiable for each such ground. Id., 398 U.S. at 55, 90 S.Ct. at 1577, 26 L.Ed.2d at 42. The majority has developed no such standards here.

My last concern, and what I willingly would call my own unsubstantiated fear, is that the majority is trying to slip in the back door a new standard for reviewing speedy trial cases. By freeing Phillips on the ground that prosecutorial delay alone allows an unsupported presumption that his constitutional rights were violated, the majority effectively guts this court's previous endorsement, adoption and application of the *Barker* balancing test. See, e.g., *Caton*, 709 P.2d at 1266. Consequently, we are left without any principled standard by which to apply this new presumption— we are simply set adrift on a sea of emotional reaction to district court delays with neither compass, sexton, paddles nor provisions. Logically, the majority's rationale forces us to choose from the two rigid alternatives which Justice Powell expressly rejected in *Barker*: (1) that we can presume a defendant to have waived his right to a speedy trial; and (2) that "the Constitution requires a criminal defendant to be offered a trial within a specified time period." *Barker*, 407 U.S. at 529, 92 S.Ct. at 2191, 33 L.Ed.2d at 116. The first alternative is easily dismissed because of the very nature of the right to a speedy trial and all appellate courts' inherent abhorrence for the idea of waiver when such a right is at stake. Id., 407 U.S. at 525–26, 92 S.Ct. at 2189–90, 33 L.Ed.2d at 113–14. The second alternative should be equally unattractive for the very reason that Justice Powell rejected it:

[S]uch a result would require this court to engage in legislative or rulemaking activity, rather than the adjudicative process to which we should confine our efforts. * * * We find no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months.

Id., 407 U.S. at 523, 92 S.Ct. at 2188, 33 L.Ed.2d at 113.

Despite this, I suspect that after our decision in this case the practice of reversing all criminal convictions obtained after a trial delay exceeding a specified time period might be attractive to the majority because of the superficial simplicity with which it can be applied. In Wyoming, Uniform District Court Rule 204 (previously Rule 22, Uniform Rules for the District Courts) states that all criminal defendants must be brought to trial within 120 days of arrest.[6] This is currently the only proce-

---

**6.** We should not analogize a strict enforcement of Rule 204 with the Federal Speedy Trial Act of 1974, 18 U.S.C. §§ 3161 through 3174 (1977). Under this federal statute an accused must be tried within sixty days of entry of a plea of not guilty. 18 U.S.C. § 3161(c). A delay of longer than sixty days, however, does not result in an automatic dismissal of the charges *with prejudice.* Instead, the statute vests the district court with discretion to dismiss the charges either with or without prejudice after it considers, among others, each of the following factors: *the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.* Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere *shall constitute a waiver of the right to dismissal under this section.* 18 U.S.C. § 3162(a)(2) (emphasis added). This *legislative* action by the Congress plainly shifts significant discretionary elements of the *Barker* balancing test towards addressing the question of whether charges not brought to trial within the statutory time limit will be dismissed with or without prejudice. See, e.g., *United States v. Simmons*, 786 F.2d 479, 485–86 (2d Cir.1986). It also adds a waiver rule regarding dismissal, which *Barker* might not sanction. It in no way represents a policy that can be used to bolster the majority's decision to free Phillips in this case. If Wyoming is to follow the federal statute concerning speedy trials, the decision to do

dural guidance in Wyoming stating a specified time period for trying those charged with crimes. Cf. W.R.Cr.P. 45(b). However, the 120–day period is not mandatory under the Federal Constitution or the Wyoming Constitution, is not a rule promulgated or adopted by this court and is not the will of the people of Wyoming as expressed through our legislature. *Barker*, 407 U.S. at 523, 92 S.Ct. at 2188, 33 L.Ed.2d at 113; and *Robinson v. State*, 627 P.2d 168, 171–72 (Wyo.1981); accord *Cook v. State*, 631 P.2d 5, 9–11 (Wyo.1981). It is merely a nonbinding procedural anomaly, which I fear is now lingering in the back of the majority's imagination.

When this court last addressed a speedy trial challenge based on Rule 204 in *Robinson*, we openly rejected dismissing the charges with prejudice on that basis, stating:

> The adoption of [Rule 204] by the Judicial Conference was obviously to set guidelines to encourage and motivate prompt disposition of criminal cases and to avoid a constitutional violation with respect to speedy trial requirements. *It should be noted particularly that no sanction of dismissal is provided by the rule. To so provide would have caused it to be inconsistent with Rule 45(b), W.R.Cr.P. by defining "unnecessary delay," which this court has decided must be determined on a case-by-case basis following standards and the tests set out in [Estrada v. State, 611 P.2d 850, (Wyo.1980) (adopting the analysis used in Barker)]*. Its adoption was accordingly admirable but the fixing of an absolute deadline by [Rule 204] was in conflict with, superseded and modified by Estrada.

*Robinson*, 627 P.2d at 171–72 (emphasis added).

If the majority's ultimate objective here is to put some teeth into the Rule 204 time limit, then the majority should come forward with an opinion overruling *Robinson* and the other Wyoming cases that rely on it. In that way, the people of Wyoming

could judge for themselves whether an accused in Phillips' situation should go free. If that is not the objective, then the majority should explain how it decided, in this case, that the substantive balance of the *Barker* factors led it to the conclusion that this delay was long enough to dismiss these charges, but obviously would not have led the highest court in the land to do so in a more egregious case.

I believe that when we analyze these factors, *as applied by this court and the United States Supreme Court in cases factually similar to this one*, one centrally relevant consideration emerges: Whether the accused has been unfairly prejudiced in a constitutional sense such that the delay in prosecution has *demonstrably* impaired his defense so that he no longer can be said to be cloaked with the presumption of innocence, or such that the delay in prosecution has *actually* unfairly prejudiced his liberty interests. Only if the accused has been unfairly prejudiced by the delay, and only if that prejudice tips the balance in his favor, is he then entitled to the umbrella of the speedy trial right's protection, namely, dismissal with prejudice of the criminal charge underlying his conviction.

In the speedy trial setting, the societal interest in seeing an accused fairly tried and, if justly convicted, rightly punished, requires that criminal charges be dismissed *only* when the unnecessary delay prevents the accused from receiving a fair trial, or when the accused can show that an unnecessary delay actually impaired his liberty. When delays shorter than those rejected by a seven-person majority of the United States Supreme Court have not prevented the accused from receiving a fair trial, and no actual impairment of liberty is shown, the societal interest requires that the criminal charges be affirmed and that the accused reap the harvest sown by the criminal behavior underlying his conviction. Words sufficiently descriptive to express my disapproval of the majority's decision and the rationale used to reach that deci-

so belongs to the legislature. This court should strive to avoid leaving the impression that it

wants to create that legislative result by implication.

sion here fail me. I would affirm this conviction.